CURRIER (BRADLEY v.). See Case No. 1,777.

CURRIER (CATLIN v.). See Case No. 2,518.

CURRIER (FISHER v.). See Case No. 4,818.

CURRIER (PERKINS v.). See Case No. 10,985.

---

## Case No. 3,493.

### CURRIER v. WEST-SIDE ELEVATED PATENT RY. CO.

[6 Blatchf. 487.] [1]

Circuit Court, S. D. New York. June Term, 1869.

ELEVATED RAILROAD—INJUNCTION — OWNERSHIP OF STREET—CONSTRUCTION OF STATUTES.

1. C. owned premises at the northeast corner of Fulton and Greenwich streets, in the city of New York, bounded, by deed to him, on the west, by the easterly side of Greenwich street, and, on the south, by the northerly line of Fulton street, but had no deed of any portion of the soil of Greenwich street. A corporation erected, in Greenwich street, in front of said premises, but outside of the lines thereof, one or more posts on which to lay an elevated railway. The corporation of the city of New York had theretofore exercised acts of ownership over the soil of Greenwich street, in front of said premises. *Held*, on a motion by C., on bill filed, for an injunction to restrain the construction of such railway, that C. had failed to make out that any property of his had been taken by the corporation.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2. *Held*, also, that, as the legislature of New York had authorized the construction of the railway, in the manner in which it was being constructed, this court could not interfere, by injunction, with such construction, on the ground that it was a nuisance.

3. The acts of the legislature of New York of the 22d of April, 1867 (Sess. Laws 1867, c. 489), and the 3d of June, 1868 (Sess. Laws 1868, c. 855), are not void, as containing a delegation of legislative authority.

4. Even if the railway were being constructed without authority of law, C., not owning in fee any of the land in Greenwich street, could not, in the absence of proof of special damage, maintain a suit to enjoin the construction of the railway.

[Cited in Lorie v. North Chicago City Ry. Co., 32 Fed. 271.]

In equity. This was an application for a provisional injunction, to restrain the defendants from further prosecuting the construction of an elevated railway in the city of New York, in and through the length of Greenwich street, northerly, to the Ninth avenue, and thence, northerly, through the Ninth avenue, to the Harlem river; and from interfering, in any manner, with the "enjoyment" of the plaintiff [John A. Currier] "in his possession" of "two lots on Greenwich street," and of the premises in front of said lots, to the middle line of said street, and from, in any manner, injuring or destroying the value of the said premises.

The defendants became incorporated, under the name of the West Side and Yonkers Patent Railway Company, as a corporation for constructing, maintaining, and operating a railway for public use, in the conveyance of persons and property, by means of a propelling rope or cable attached to stationary power, under the provisions of an act of the legislature of the state of New York, passed April 20th, 1866, providing for the creation of such corporations. On the 22d of April, 1867, an act was passed by the said legislature (Sess. Laws 1867, c. 489), authorizing the said corporation to commence and proceed with the construction of an elevated railway in the counties of New York and Westchester, in the manner and upon the route therein specified. The act provided, that the propelling power for operating the railway should be cables attached to stationary engines; that there should be one track on one side of the street, on which the cars were to be moved in one direction, and another track on the other side of the street, on which the cars were to be moved in a contrary direction; that the track should be supported by iron columns, the size of which, at the surface of the pavement, and the length of the intervals between which, and the height of which track above the surface of the pavement, were prescribed; that the corporation might commence the construction of such railway at the southerly extremity of Greenwich street, near Battery place, and extend the same, northerly, along Greenwich street, for the distance of half a mile in length; that

a stationary engine should be placed at about the centre of such half mile, to operate two lengths of propelling cable, extending about one-fourth of a mile northerly, and one-fourth of a mile southerly, with a loaded car; that such experimental line should be in readiness within one year from the passage of the act, (legal delays excepted,) and then three commissioners, two of whom should be appointed by the governor of the state, and one by the Croton aqueduct board of the city of New York, should proceed to inspect the railway, and its structures, and operating machinery; that, if the said commissioners should approve of the structures, plan, and operation of the railway, and should find that the same could be operated with safety and despatch, they should certify to such facts, by a duplicate certificate, of which one copy should be sent to the governor, who, upon approving it, should cause it to be filed in the office of the secretary of state, and one copy should be transmitted to the mayor of the city of New York; that, thereupon, the corporation should be authorized to extend the lines of said railway, northerly, along both sides of Greenwich street, to Ninth avenue, and along both sides of Ninth avenue, or streets west of Ninth avenue, to the Harlem river; and that, in case the commissioners should not approve of the railway, and its plan of construction and operation, they should sign a certificate of the facts, with an order for the removal of the railway, and it should be removed. The act used the following language: "The use of such railway, in the streets aforesaid, is hereby declared a public use, and consistent with the uses for which the mayor, aldermen and commonalty hold the same." The last section of the act was as follows: "This act shall take effect immediately." On the 3d of June, 1868, an act was passed by the said legislature (Sess. Laws 1868, c. 855), in relation to the corporation, and its railway, which provided, that the time for constructing the experimental section should be extended six months; that the corporation might adopt such form of application of the propelling cable, or such other motor, as the commissioners should approve; and that the corporation might, in a certain specified manner, change its corporate name or title. The last section of this act was as follows: "This act shall take effect immediately."

The bill, after setting forth the acts aforesaid, averred that the corporation duly changed its name to that by which it was sued; that it commenced the construction of a railway, with the intention of continuing the construction of the same from Battery place and the southern extremity of Greenwich street, northerly, through Greenwich street, to the Ninth avenue, and thence, northerly, through the Ninth avenue, to the Harlem river, and was then engaged in so constructing the same, and had constructed about half a mile in length; that such construction had been approved in writing by the commission-

ers appointed under the act of 1867, and their certificate of approval had been duly filed; that it was the intention of the defendants to endeavor to avail themselves of all the privileges purporting to be conferred by the acts, and, for that purpose, to take possession of so much of the streets and avenues through which it was proposed to run the railway, and of the private property of the owners of the premises fronting upon said streets and avenues, as might be necessary to enable the defendants to construct the railway; and that the plaintiff was the owner of two lots on Greenwich street, of twenty-five feet in width, and situated in front of the said experimental line. The bill then contained this averment: "And your orator further avers, that he is the owner of the said lots in fee, in his own right, and that, as he is informed and believes, he is also the owner of the premises in front of the said lots, to the middle line of the said street, and that the said street never became the property of the city of New York, and that the city of New York has only an easement or right of way therein; that, upon said premises, there is a brick building erected, four stories high; that the defendants claim the right to construct their railway along the premises of the plaintiff, in the manner described in the acts; that, if the said railway is so constructed, great and irreparable injury will occur to and be sustained by the plaintiff, for which he cannot have an adequate compensation at law; and that the placing of an elevated railway, in compliance with the description contained in said acts, in front of said premises, will embarrass access to the front portion thereof, will darken the windows thereof, and obstruct the view therefrom, will impede and prevent the free circulation of air therein, and will, by reason of the noise of the proposed cars, seriously injure the said building, as a habitation; that the acts referred to, and the rights claimed by the defendants as properly to be exercised thereunder, are in violation of article 5 of the amendments to the constitution of the United States, which provides, that private property shall not be taken for public use, without just compensation, and of section 7 of article 1 of the constitution of the state of New York, which provides, that, when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law, and that the authority purporting by said acts to be conferred upon the commissioners mentioned therein is in violation of section 1 of article 3 of said last named constitution, which provides that the legislative power of the state shall be vested in a senate and assembly; and that the erection of the railway in the manner now proposed, will be, and the same, so far as erected, now is, a nuisance." The

bill prayed that the defendants might be decreed to have no legal right to construct their elevated railway in the manner proposed, along the route proposed, and that they might be enjoined, as above mentioned, and that the said proposed road, and the same, so far as then constructed, might be decreed to be a nuisance, and that the defendants might be decreed to remove the same.

Edwin W. Stoughton, Clarence A. Seward, and George Stevenson, for plaintiff.

William M. Evarts and Edward C. Delavan, for defendants.

BLATCHFORD, District Judge. The plaintiff has not furnished any description of either one of the lots referred to in the bill, claimed to be owned by him, but the defendants show that the plaintiff has a deed conveying to him the premises known as No. 201 Greenwich street, being at the northeast corner of Fulton and Greenwich streets, and being bounded, in the deed, on the west by the easterly side of Greenwich street, and on the south by the northerly line of Fulton street. The plaintiff shows no other deed to himself of any premises, and no deed of any portion of the soil of Greenwich street, and the defendants show acts of ownership heretofore exercised by the corporation of the city of New York over the soil of Greenwich street, in front of the premises covered by the said deed. On this state of facts, it must be held, that the plaintiff has failed to make out that any property of his has been taken by the defendants. They have not entered or trespassed in any way upon the premises covered by the deed to the plaintiff. All that they have done in Greenwich street, in front of said premises, has been done outside of the lines of said premises. Whatever the presumption might be as to the ownership of the fee of the street, if the plaintiff's premises were bounded on the west on or by Greenwich street, instead of being bounded, as they are, by the deed, on the west, by the easterly side of Greenwich street, such presumption is rebutted by the language of the deed; and, even if such presumption, in case of a boundary on or by the street, would be that the fee of the soil of the street was owned by the plaintiff to the centre of the street, that presumption would be rebutted by the acts of ownership shown to have been exercised by the corporation of the city over such soil.

The only other question is, the one of a nuisance. If the legislature has authorized the construction of this railway in the manner in which it is being constructed, this court cannot interfere, by injunction, with such construction, on the ground that it is a nuisance. It is not contended that the actual mode of construction differs from the authorized mode of construction, if any construction is authorized by any valid law. The question, raised by the bill, as to tak-

ing private property for public use, being out of the case, the only other constitutional question raised is, whether the acts in question are void, as contain'ng a delegation of legislative authority to the commissioners mentioned therein. It is claimed that, inasmuch as, by the acts, the defendants have no authority conferred upon them to continue in existence the experimental half mile, or to extend the road, unless the commissioners shall approve. the acts confer upon the commissioners legislative power. On this point, the authority of the case of Barto v. Himrod, 4 Seld. [8 N. Y.] 483, decided in 1853, is invoked. In that case, it was decided, that an act of the legislature in regard to free schools, which declared that the electors of the state should determine by ballot, at an annual election, whether such act should or should not become a law, was unconstitutional and void, as being a delegation of legislative power. In the opinion of Chief Justice Ruggles, it is stated, that the act did not, on its face, purport to be a law, as it came from the hands of the legislature, for any other purpose than to submit to the people the question whether its provisions in relation to free schools should or should not become a law, and that, by one section of the act, it was provided that the act should become a law only in case it should have a majority of the votes of the people in its favor. The difference between the statute in that case and the acts now under consideration is manifest. In each of the latter, there is an express provision that it shall take effect immediately. Its existence and validity, as a legislative enactment, are not made dependent, in any manner, upon any future event, or upon any action or nonaction, or approval or disapproval, by the commissioners. The continuance of the experimental half mile of railway, after it shall be constructed, and the extension of the road further, are, indeed, made dependent upon the approval of the commissioners. But the enactment of such a provision is no delegation of legislative power. Hundreds of statutes are passed by the legislature, conferring contingent rights on individuals and corporations, dependent upon the doing of certain acts, or the making of certain certificates. In all general laws for the creation of corporations, the individuals who associate to form the corporation are required to file, in a certain place, a certificate, in a certain form, and, unless that is done, there can be no corporation; and yet, it was never contended, that the making of the creation of the corporation to depend upon the happening of such a future event, although lying wholly in the will of individuals, was a delegation of legislative power. In Corning v. Greene, 23 Barb. 33, decided in 1856, a statute provided that the corporation of the city of Albany should file their consent thereto, within a certain time after the passing of the same, or the bill should be void, and it was urged, that, as the statute was passed on condition that it should not be a law unless the corporation consented, it was not a constitutional exercise of legislative power. But it was held, that, as the statute emanated from the legislative will alone, and had an existence from that single source, it became a mere question of expediency when and how it should cease to exist; that, upon that question, the legislature might properly exercise its judgment; and that, as it had exercised and given expression to it in the statute, the statute was not for that reason invalid, and the case was not within the principle of Barto v. Himrod [supra].

In Grant v. Courter, 24 Barb. 232, it was held, that a statute authorizing a town to borrow money, provided the consent of a certain proportion of the tax-payers was first obtained, was a statute in which the legislature imposed a condition or restraint on the exercise of the power conferred, and that the imposing of such condition was as much the unaided emanation of the will of the legislature as the conferring of the power itself. The court say: "An act granting power, to be exercised upon such conditions as the legislature impose, is no delegation of legislative authority, nor is it invalid."

In Bank of Rome v. Rome, 18 N. Y. 38, decided in 1858, it was held by the court of appeals of New York, that a law which, by its terms, was to take effect immediately, but which conferred upon the authorities of a village certain powers which were not to be exercised until the act had been approved by a vote of the inhabitants, was constitutional, and was not a delegation of legislative power, within the case of Barto v. Himrod.

Under the settled law of the state of New York, the acts in question are, therefore, not repugnant to the constitution of the state, as containing a delegation of legislative power. The acts being valid, what is being done in accordance with their provisions cannot be regarded as a nuisance, to be interfered with by injunction.

It does not appear that any damage which the plaintiff is likely to sustain from the construction of this road will be different, in kind or degree, from that which will be sustained by every other lot-owner on the streets through which the railway will pass. Under such circumstances, the case of Osborne v. Brooklyn City R. Co. [Case No. 10,597], decided by Mr. Justice Nelson and Judge Benedict, in the circuit court of United States for the eastern district of New York, in December, 1866, is an authority, binding on this court, for the principle, that, as the plaintiff is not shown to be the owner in fee of any land in Greenwich street over which the railway will pass, he could not maintain this suit, in the absence of proof of special damage, even if it appeared that the defendants had no right to construct the railway in Greenwich street, and were erecting, or about to erect, a public nuisance. The court say, in

that case: "They do not propose to enter upon any land of the plaintiff's, and the damage occasioned by the road to the plaintiff will not be different, in kind or degree, from that sustained by every other lot-owner upon the avenue. It is damage resulting from the depreciation of the value of lots abutting on the street, by reason of a railroad running through it, in front of, but not over, the plaintiff's land. Now, it is well settled, that damage sustained alike by all the individuals of a large class, furnishes no foundation for an action on the part of a single individual of the class. Lansing v. Smith, 8 Cow. 146; Davis v. Mayor, 14 N. Y. 506. It was incumbent, therefore, on the plaintiff, to show some special damage sustained, or likely to be sustained, by him, differing in kind from that sustained by the neighborhood, to entitle him to ask the interference of the court in his behalf. No such damage is pretended to exist, and its absence is fatal to the plaintiff, on this motion." The application for an injunction is denied.