## PEOPLE EX REL. RHODES V. FLEMING ET AL.

1. It is well settled in this state that the constitution is not a grant of power to the legislature, but that the legislature is invested with plenary power for all the purposes of civil government, and that the constitution is but a limitation upon that power.

2. The power to confer upon the persons named in the general law for the incorporation of cities and towns authority to do certain acts therein specified, not being prohibited by the constitution, such law is not unconstitutional by reason of the delegation of such authority.

3. This court cannot pass upon the expediency or policy of a statute; these are questions upon which the judgment of the legislature cannot be reviewed by the courts.

*Appeal from District Court of Arapahoe County.*

THE plaintiff, the people of the state of Colorado, by and upon the information of L. R. Rhodes, district attorney, brought suit against James A. Fleming and others to oust the defendant Fleming from the office of mayor of the town of South Denver, and to oust the other defendants from the office of trustees of said town. Defendants demurred to the complaint, which was sus-

tained, and judgment entered dismissing the case, from which plaintiff appeals.

Messrs. L. R. RHODES, BARTELS and BLOOD, and T. J. O'DONNELL, for appellants.

Messrs. JOHN HIPP and CHAS. H. TOLL, for appellee.

RISING, C. This action is brought to oust the defendant Fleming from the office of mayor of the town of South Denver, and to oust the other defendants from the office of trustees of said town. The complaint sets out the proceedings had in the incorporation of said town, which proceedings show that the provisions of the General Statutes relating to the organization of towns were fully complied with. The complaint further sets out that the area of said town is about nine square miles, and that a considerable portion of the territory included in the boundaries of said town is unoccupied and unimproved land, owned by non-residents of said town, and that most of the land embraced within the limits of said town is very sparsely settled or inhabited. Defendants demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. Demurrer sustained, and judgment dismissing the case entered.

The validity of the incorporation of the town of South Denver is assailed upon the ground that the statute under which the proceedings for incorporation were had is unconstitutional. It is claimed by appellants that the statute is in conflict with the provisions of article 3, Constitution, which reads as follows: " The powers of the government of this state are divided into three distinct departments — the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed

or permitted." The statutes claimed to be in conflict with said constitutional provision are sections 3299, 3300, General Statutes. Section 3299 is as follows: "When the inhabitants of any part of any county, not embraced within the limits of any city or incorporated town, shall desire to be organized into a city or incorporated town, they may apply by petition in writing, signed by not less than thirty of the qualified electors of the territory to be embraced in the proposed city or incorporated town, to the county court of the proper county; which petition shall describe the territory proposed to be embraced in the proposed city or incorporated town, and shall have annexed thereto an accurate map or plat thereof, and state the name proposed for such city or incorporated town, and shall be accompanied with satisfactory proofs of the number of inhabitants within the territory embraced in said limits." That portion of section 3300 assailed as invalid is as follows: "When such petition shall be presented, the court shall forthwith appoint five commissioners, who shall at once call an election of all the qualified electors residing within the territory embraced within said limits as described and platted, to be held at some convenient place within said limits." This section further provides the manner of giving notice of such election by said commissioners, and what the notice shall contain; that the commissioners shall act as judges and clerks of said election, and report the result of the ballot to said county court.

It is not claimed that the statute confers, or attempts to confer, upon the county court any legislative power; but it is claimed that the statute is unconstitutional, in that the power to determine the extent and boundaries of such municipal corporations is thereby conferred upon individuals, and that such power is vested in the legislature, and cannot be delegated to private persons. "One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws can-

not be delegated by that department to any other body or authority." Cooley, Const. Lim. 139. The constitution (sec. 13, art. 14) makes it the duty of the general assembly to provide by general laws for the organization of cities and towns. The statute under consideration was enacted in compliance with that requirement. The legislature cannot, by general law, fix the boundaries of towns and cities that may be thereafter incorporated under it. The operation of such general law must necessarily be made to depend upon contingencies, and the power to take the initiative steps to bring the law into operation upon the happening of the contingent event must be delegated to some body or persons. This power arises under the general rule " that when a constitution gives a general power, or enjoins a duty, it also gives, by implication, every particular power necessary for the exercise of the one or the performance of the other." Cooley, Const. Lim. 77. In speaking of a general law of Illinois, providing for the incorporation of cities and villages,— the terms of which law are as broad as our statute as to the territory to be included within the corporate limits, except that no more than four square miles shall be so included, and, as to the duties to be performed by the county judge, these are substantially the same as the duties performed by the county court and the clerk of said court under our statute,— the supreme court of that state say: "It would be absurd to suppose it was intended that, when the general law was enacted, it should bring into being all the corporations that could ever be organized under it, or that, every time a necessity should subsequently exist for the incorporation of a city, town or village, a general law should be enacted by the general assembly for that purpose. All that is practicable, or could have been intended, was that the legislature should, by a general law, provide for the incorporation of cities, towns and villages, or the change or amendment of their charters, leaving it to those interested to bring them

within its operation; and this has never, in this state, been held to be a delegation of legislative authority." *Guild v. City of Chicago*, 82 Ill. 472, 476. It must be understood that the legislative authority spoken of in the case last cited, as well as in all the decisions of the courts upon this question, is the authority to make laws, and that, when the authority conferred upon bodies or individuals is not an authority to make laws, then there has been no delegation of legislative authority within the meaning of the decisions. From the nature of the case, the general assembly is without power to do the acts required to be done to give effect and put in operation the general law for the organization of cities and towns. The passing of a general law is the limit of the power expressly conferred upon the general assembly for the organization of cities and towns, and, in passing such law, it has exercised all the legislative authority it can exercise at that time; but, in providing for the means for carrying the law into effect, it must of necessity confer upon some bodies or individuals the power to do such acts as could not be done by it. The fixing of the boundaries of such cities and towns is among the acts that must be performed by and through such conferred power. The power conferred upon the petitioners and the county court, and the clerk of said court, and upon the electors of the territory within the limits of the proposed city or town, is not a delegation of legislative authority, because it can in no sense be said to confer upon such individuals the power to make laws, in that it does not confer upon them the power to do that which the constitution requires of the general assembly to do.

It is claimed by appellants that the general assembly is not prohibited by the constitution from passing special laws for the incorporation of cities and towns, and that therefore it has full, complete and exclusive power to fix the boundaries of all cities and towns. We do not think this claim can be sustained. The constitution provides that

no special law shall be enacted by the general assembly where a general law can be made applicable. It also provides that the general assembly shall provide by general laws for the organization of cities and towns. By this last provision it is determined by the sovereign power that a general law for the organization of cities and towns can be made applicable, and it necessarily follows that all special laws upon that subject are prohibited. It is now well settled that laws delegating such power, in such a manner as is done under the statute under consideration, are not unconstitutional. *People v. Reynolds*, 5 Gilm. 1; *Clarke v. City of Rochester*, 28 N. Y. 605–634; *Bank v. Brown*, 26 N. Y. 467–475; *Currier v. Railway Co.* 6 Blatchf. 487; *Mayor v. Shelton*, 1 Head, 24; *People v. Salomon*, 51 Ill. 37; *Alcorn v. Hamer*, 38 Miss. 652; *Com. v. Quarter Sessions*, 8 Pa. St. 391; *Bull v. Read*, 13 Grat. 78–88; *Blanchard v. Bissell*, 11 Ohio St. 96–100; *Locke's Appeal*, 72 Pa. St. 491; *People v. Nally*, 49 Cal. 484; *Dalby v. Wolf*, 14 Iowa, 228. The law upon this question is clearly and forcibly stated by Field, J., in *Blanding v. Burr*, 13 Cal. 343–358, as follows: "Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the legislature, in its wisdom, may impose. They may take effect only upon the happening of events which are future and uncertain, and, among others, the voluntary act of the parties upon whom they are designed to operate. They are not the less perfect and complete, when passed by the legislature, though future and contingent events may determine whether or not they shall ever take effect.  *  *  *  So, the legislature may confer a power without desiring to enforce its exercise, and leave the question whether it shall be assumed to be determined by the electors of a particular district. The legislature may determine absolutely what shall be done, or it may authorize the same thing to be done upon the consent of third parties. It may command, or it may only permit; and in the lat-

ter case, as in the former, its acts have the efficacy of law."

Counsel for appellants, while conceding that the power to fix and determine the corporate boundaries of towns may be delegated by the legislature, contend that such power must be delegated to some appropriate local body possessing political or legislative power, such as a board of county commissioners, and that it cannot be delegated to individuals. In considering the question whether the legislature has exceeded its power in enacting the statute under consideration, we look to the constitution, not for a grant of the power, but to ascertain whether the exercise of such power is prohibited; and, if it is not prohibited, the act is valid. *Alexander v. People*, 7 Colo. 155–160. There is no provision in the constitution expressly prohibiting the delegation of such power to individuals, and there is no provision requiring the delegation of such power to be made to political, legislative, or other bodies, from which such prohibition may be implied. Whether such power shall be delegated to boards of county commissioners or other local bodies, or to some individual, or collection of individuals, seems to us to be purely a question of policy or expediency; with which questions courts have nothing to do, in determining the validity of a statute. *Railroad Co. v. Smith*, 62 Ill. 268–271. An examination of the decisions of the courts seems to warrant the conclusion that it is well settled that the legislative power is not limited as claimed by appellants. In relation to the power of courts of quarter sessions in Pennsylvania, acting through commissioners, to erect new townships and divide old ones, it is said: "No one has ever doubted the constitutional right of the legislature to authorize the exercise of both these jurisdictions by the courts, because it has never been imagined that it bore any resemblance to the power of enacting laws. Indeed, it is so entirely dissimilar that an elaborate attempt to show the contrast would be a mere waste of words.

*But, if the legislature can authorize courts to decide questions of this character, they can authorize the people primarily to do so.* The difficulty is simply as to the right to impart the power to act. If it can be given to a selected few, it may also be delegated to all the inhabitants of a district, unless positively prohibited." *Com. v. Quarter Sessions,* 8 Pa. St. 391–395, 416. The right to delegate power to put in operation and carry out laws passed by the legislature being conceded, that the manner in which such right shall be exercised rests wholly in the legislature is thus stated by the supreme court of Illinois, in commenting upon the authority given to municipalities to pass ordinances: "It may be true that this authority is usually conferred upon a board of trustees or city council; but that does not affect the question, so far as a delegation of authority is concerned. This authority might as rightfully be conferred upon the mayor alone, or upon the voters of a city, as upon a common council. It is presumed that there is no constitutional provision determining upon how many, or upon how few, the legislature may confer the power. That must be left to legislative discretion." *People v. Reynolds,* 5 Gilman, 1–18. In the case of *Currier v. Railway Co.* 8 Blatchf. 487–493, the court says: "In all general laws for the creation of corporations, the individuals who associate to form the corporation are required to file, in a certain place, a certificate in a certain form, and unless that is done there can be no corporation; and yet it was never contended that the making of the creation of the corporation to depend upon the happening of such a future event, although lying wholly in the will of individuals, was a delegation of legislative power." In the case of *People v. Salomon,* 51 Ill. 37–55, the court say: "The power to enact laws necessarily includes the right in the law-making power to determine and prescribe the conditions upon which the law, in a given case, shall come into operation or be defeated; and this contingency may as

well be the result of the vote of the people of the locality to be affected by the law as any other." The reasons for sustaining the right of the legislature to delegate such power to individuals, as well as to incorporated municipalities or local bodies, are given by the supreme court of Mississippi in the following language: "And it would seem to be a proposition too clear for argument, that if the legislature have the right to enact the statute, and make it depend for coming into force upon the vote of a district or a portion of the people, that the power is not derived from the fact that the persons who are to vote upon the proposition are associated together as members of the same municipal body, or as inhabitants of some legal or constitutional subdivision of the territory. For in all cases of a corporation or a *quasi* corporation, the rights, privileges and powers of the corporators, or the body appointed to act for it, are conferred in the act creating such corporation. And no one will maintain that, by the passage of an act. creating a corporation, the legislative power has been enlarged so as to authorize it to delegate an authority to such corporation which it was incompetent to confer in the first instance." *Alcorn v. Hamer*, 38 Miss. 652, 758, 759. The case of *Shumway v. Bennett*, 29 Mich. 451, cited by counsel for appellants, is the only case we have been able to find sustaining the position of appellants, that the power to fix the corporate boundaries of towns cannot be by the legislature delegated to individuals, but must be delegated to some public body possessing certain legislative powers. An examination of that case shows that, while several questions are discussed in the opinion, but one question is decided; and that is that "it is not in the power of a legislature to abdicate its functions or to subject citizens and their interests to the interference of any but lawful agencies; * * * that such legislative and local authority as can be delegated at all must be delegated to municipal corporations or local boards or officers,"— the court hold-

ing that " it is impossible to sustain a delegation of any sovereign power of government to private citizens, or to justify their assumption of it." Upon the theory that a delegation of sovereign power cannot be delegated to private citizens, the incorporation of a village under a statute very similar to our statute was held invalid.

We do not understand that the constitutionality of the provision of the statute submitting the question of incorporation to the resident voters within the limits of the proposed village was questioned, but that the objection goes to the power delegated to the petitioners, to the judge of the circuit court, and to the clerk of such court; and this objection is not based upon the assumption that the power delegated to these individuals cannot be delegated by the legislature to any one, but upon the holding of the court that such power, if delegated at all, must be delegated to some body recognized by the constitution as capable of receiving such authority, and having local jurisdiction over the territory to be incorporated. This decision is so at variance with the doctrine of the cases we have cited, and with the general current of authority upon this question, that it seems apparent that it must be based upon some constitutional provision relating to the delegation of such authority. While the opinion does not mention the provision of the constitution which relates to the delegation of such power, it is said therein that such power must be delegated to some body recognized *by the constitution* as capable of receiving such authority. It is also said, in the opinion, that such authority must be delegated to municipal corporations or local boards and officers. Section 38 of article 4 of the constitution of that state is as follows: " The legislature may confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such powers of a local, legislative and administrative character as they may deem proper." By this provision of the constitution, bodies capable of

receiving such authority are recognized, and the bodies so recognized are the ones named in the opinion as the bodies to which such power must be delegated, if delegated at all. That the power to fix the boundaries of towns existed in the legislature is conceded by the court in that case, and the question whether such power could be delegated or not was not decided; but it was decided that, if such power could be delegated, it must be to some body recognized by the constitution as capable of receiving such delegated authority. Our constitution does not contain any provisions similar to the provisions of section 38 of article 4 of the Michigan constitution, and for that reason the case of *Shumway v. Bennett* is not an authority upon any question raised in this case. But, if it should be conceded to be an authority directly in point, we could not follow it. It is well settled in this state that the constitution is not a grant of power to the legislature, but that the legislature is invested with plenary power for all the purposes of civil government, and that the constitution is but a limitation upon that power. The power to confer upon the persons named in the general law for the incorporation of cities and towns authority to do certain acts therein specified, not being prohibited by the constitution, such law is not unconstitional by reason of the delegation of such authority.

Appellants make the further objection that the incorporation of South Denver is invalid, for the reason that unoccupied and farming lands were included within the limits of the town; and contend that the words " the inhabitants of any part of any county," found in the general law for the incorporation of cities and towns, must, under the constitution, and by a reasonable and natural interpretation thereof, be held to mean the inhabitants of any unincorporated town, village, settlement or collection of houses; that, before any part of a county can be incorporated into a town, it must be inhabited as a village or town. We do not think the statute should be so construed. There is nothing in the language of the

statute to warrant such construction.   Under the statute, it is the inhabitants of any part of a county not within the limits of any incorporated city or town that may be organized into a city or town.   To hold that such part of a county cannot exceed the limits of, and must embrace, some village or larger collection of houses and inhabitants, would be judicial legislation.   The Pennsylvania cases and the Missouri cases cited by appellants are not in point, for the reason that the statutes of those states expressly provide for the incorporation of existing towns and villages.   The case of *Shumway v. Bennett* holds that the language is broad enough "to cover any kind of territory, unless modified by other provisions."

Counsel for appellants urge, as a further reason why the statute should not be so construed as to authorize farming and unoccupied lands to be included within the limits of a town incorporated thereunder, the fact that under a construction not limiting the territory that may be so incorporated to such part of a county as is thickly settled, and has some of the characteristics of a town, there would be no limitation as to territory that might be included within the limits of such corporation, and that such unlimited power is liable to abuse, by subjecting farming and unoccupied lands to an increased taxation, without any corresponding benefits.   The statute is free from ambiguity, and means what it says, and says what it means, in words that admit of but one interpretation, and that interpretation will permit the including of farming and unoccupied lands within the limits of towns to be incorporated under the statute; therefore, the contention of appellants does not raise any question of interpretation or construction, but raises the question whether the courts can declare an act of the legislature invalid on the sole ground that it is repugnant to natural justice or expediency.   The question so presented has been exhaustively treated by Mr. Sedgwick in his work on the Construction of Statutory and Constitutional Law, and by Judge Cooley in his work on Constitutional Lim-

itations, and the conclusion is reached that courts cannot so interfere with the action of the legislative branch of the government. The statement of his conclusions by Mr. Sedgwick, with a review of authorities in support of such conclusions, will be found on pages 154–159 of said work; and the following quotation from Cooley, Constitutional Limitations, 201, 202, presents the views of that learned author upon this question: "The rule of law upon this subject appears to be that, except when the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not, in any particular case. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason and expedience with the law-making power."

We think the statute is free from all constitutional objection, and therefore our sole duty is to carry it into execution. We cannot pass upon its expediency or policy; those are questions upon which the legislature has passed, and its judgment cannot be reviewed by the courts.

The judgment should be affirmed.

We concur: De France, C.; Stallcup, C.

Per Curiam. For the reasons given in the foregoing opinion the judgment is affirmed.

*Affirmed.*