STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Colorado corporation; P.C.M.T. Partnership, a Colorado general partnership; Tishman West Management Corporation, a California corporation; Martin Marietta Corporation, a Maryland corporation; and ROC–Denver, Inc., a Delaware corporation, Plaintiffs–Appellants,

v.

The CITY OF LAKEWOOD, the City of Lakewood City Council; Dorothy Wisecarver, Hugh Campbell, William Coppock, Carolyn Bacher, Norman Beard, Thomas Leadabrand, Richard Myers, Linda Morton, Edie Bryan and Mary Bindner, as present members of the City of Lakewood City Council; Linda Shaw as Mayor of the City of Lakewood and a member of the City of Lakewood City Council; Petitioners Donald W. Lawhead, Richard M. Reynolds, Walter V. Raynor, Chris M. Saros, Walter A. Koelbel, Jr., and Walter A. Koelbel, Defendants–Appellees.

No. 88SA272.

Supreme Court of Colorado,
En Banc.

March 12, 1990.

O'Connor & Hannan, Paul G. Goss, Denver, for State Farm, P.C.M.T., Tishman and Martin Marietta.

Holme, Roberts & Owen, Lawrence Levin, Englewood, for ROC–Denver.

Calkins, Kramer, Grimshaw & Harring, Charles E. Norton, and Randall M. Livingston, Denver, for defendants-appellees.

Justice ROVIRA delivered the Opinion of the Court.

In this appeal,[1] opponents of a petition to organize the Academy Park Metropolitan District challenge the approval of the petition by the Lakewood City Council and the constitutionality of certain provisions of the Special District Act (Act), sections 32–1–101 to –1307, 13 C.R.S. (1984 Supp.). We hold that the opponents' C.R.C.P. 106(a)(4) action was properly dismissed because the Lakewood City Council's action was quasi-legislative; that the Act does not unconstitutionally delegate legislative power or deprive the opponents of due process of law; and that the opponents' declaratory judgment action concerning the Act's election procedures was properly dismissed as premature.

---

1. This case was transferred to this court from the court of appeals because the constitutionality of a statute is at issue. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

I

This appeal stems from a petition to organize the Academy Park Metropolitan District[2] (district) encompassing a tract of land of approximately 230 acres situated entirely within the municipality of Lakewood, a home rule city. Petitioners Donald L. Lawhead, Richard M. Reynolds, Walter V. Rayner, Walter A. Koelbel, Jr., and Walter A. Koelbel, as joint tenants, own approximately ⅕ of an acre of unimproved land within the proposed district, which was deeded to them by Koelbel and Company. Petitioner Chris M. Saros also owns a parcel of unimproved property within the proposed district. The six petitioners will be referred to as "the Koelbel group."

State Farm Mutual Automobile Insurance Company, P.C.M.T. Partnership, Tishman West Management Corporation, ROC–Denver, Inc., and Martin Marietta Corporation (opponents) own developed property within the proposed district.

In September 1984, the Koelbel group submitted an initial petition[3] to organize the district to the Lakewood City Council (city council). The proposed district would provide sanitation services, parks and recreational services, street improvements and traffic safety controls, and transportation services and facilities. General obligation bonds would be issued to finance the district, to be paid by the levy of *ad valorem* taxes.

The record discloses that some, but not all, of the real property owners within the district were notified of the submission of the initial petition to the city council. Further, no effort was made to notify those persons who paid personal property taxes within the district. However, public notice of the hearing on the initial petition was published in the local newspaper for three successive weeks. On December 10, 1984, the city council held a hearing on the petition. Proponents and opponents of the proposed district, including the parties to this case, were given an opportunity to speak on the merits of the petition. After the hearing, the city council adopted a resolution, by a vote of 8 to 3, approving the initial petition.

After passage of the resolution, four of the opponents filed suit in the District Court of Jefferson County against the Koelbel group, the City of Lakewood (City), and the city council. Their complaint challenged both the city council's action and the constitutionality of certain portions of the Act. ROC–Denver, Inc. filed a separate suit in the district court requesting similar relief, and the two cases were thereafter consolidated into a single action.

The opponents first requested relief pursuant to C.R.C.P. 106(a)(4), alleging that the city council's action was arbitrary, capricious, and an abuse of discretion because there were no standards to guide the city council in its decision to approve the initial petition; there were no guidelines for the procedures to be used in giving notice and providing a meaningful opportunity to be heard; the opponents were not provided with appropriate notice or a meaningful opportunity to be heard; and because the city council refused to consider the issue of whether the opponents' property should be excluded from the proposed district. The opponents assumed that Part 2 of the Act, which provides standards to county boards of commissioners when reviewing a petition for a proposed district, did not apply because the proposed district in this case was situated entirely within the boundaries of the municipality of Lake-

2. A metropolitan district is defined in section 32-1-103, 13 C.R.S. (1984 Supp.), as "a special district which provides for the inhabitants thereof any two or more of the following services: (a) Fire protection; (b) Mosquito control; (c) Parks and recreation; (d) Safety protection; (e) Sanitation; (f) Street improvement; (g) Television relay and translation; (h) Transportation; (i) Water."

3. In forming a special district, a petition to organize must be submitted for approval by both a local governing body and the district court. For clarity, we will refer to the "initial petition" when discussing the petition which is submitted to local government, and the "petition for organization" when discussing the petition which is submitted to the district court.

wood.[4] They also assumed that Lakewood City Code § 3.16, which guides the formation of special improvement districts, did not apply to the proposed district. However, they asserted that if either Part 2 of the Act or Lakewood City Code § 3.16 did apply, the city council's action was arbitrary, capricious, and an abuse of discretion because the guidelines were not followed.

The opponents also alleged that they were denied both procedural and substantive due process. They asserted a denial of procedural due process in that proper notice of the hearing was not given and they did not have a hearing before a fair and impartial tribunal. Further, the city council's failure to adopt standards to guide its determination, and the lack of applicable standards in the Act, deprived them of due process of law. Finally, the opponents brought a declaratory judgment action requesting the court to declare that Part 2 of the Act and section 3.16 of the Lakewood City Code did not apply so as to provide standards to guide the city council's action; that if they did apply, the procedures and standards were not followed; that sections 32–1–204(1), 32–1–206(2), and 32–1–304, 13 C.R.S. (1984 Supp.), are unconstitutional on their face as a denial of due process; and that sections 32–1–103(5), 32–1–305(4)–(6), and 32–1–802, 13 C.R.S. (1984 Supp.), deny equal protection to corporations and partnerships who are not permitted to vote on the formation of a proposed district or to participate in its administration.

The district court dismissed the C.R.C.P. 106(a)(4) action on the ground that the city council's action was quasi-legislative in nature. It also held that because the city council's action was legislative, no procedural due process violation existed. Further, the lack of standards to guide the city council's discretion did not deny due process because the council was obligated to make its decision in accordance with the reasonableness standard which controls the exercise of all police power, and because the subsequent procedural steps in the district formation process provide additional safeguards. Finally, the district court held that the opponents' constitutional challenge to the election procedure of the Act was premature as there was no controversy existing at the time.[5] The court did declare, however, that Part 2 of the Act and section 3.16 of the Lakewood City Code did not apply to the formation of a metropolitan district within the city. The opponents appeal the judgment of the district court.

## II

### A

In order to determine these issues, the procedures for establishing a special district must be examined. A special district is a quasi-municipal corporation organized to provide specific services to the inhabitants of such districts. The Act, §§ 32–1–101 to –1307, 13 C.R.S. (1984 Supp.), provides procedures for the formation and dissolution of a special district and delineates the powers that may be exercised by such district. Part 2 of the Act provides different procedures for the formation of a special district, depending on whether the proposed district is situated exclusively within the boundaries of an existing municipality.

For proposed districts which are not located exclusively within such boundaries, a service plan must be submitted to the board of county commissioners of each county which has territory included within the proposed district. The service plan must include a financial survey and a preliminary engineering or architectural survey showing how the proposed services are to be provided and financed; a map of the proposed district boundaries; an estimate of the population and the valuation for

---

4. Section 32–1–201, 13 C.R.S. (1984 Supp.), provides that Part 2 is not applicable "where a petition for the organization of a special district confined exclusively within the boundaries of any existing municipality has been approved by a resolution of the governing body of the municipality."

5. The district court failed to rule on the opponents' claim that sections 32–1–204(1), 32–1–206(2), and 32–1–304, 13 C.R.S. (1984 Supp.), were facially invalid as a denial of due process. Because the opponents did not raise this claim on appeal, we consider the issue abandoned.

assessment of the district; a description of the facilities to be constructed and an estimate of the costs; and the details of any arrangement or proposed agreement with any political subdivision for the performance of any services. § 32-1-202, 13 C.R.S. (1984 Supp.). The board of county commissioners must set a date for a public hearing on the service plan, and must give notice in accordance with the statute. The hearing before the board of county commissioners must be open to the public and of record. Further, all interested parties must be afforded an opportunity to be heard at the hearing. Interested parties include residents and property owners within the proposed district and interested governmental units. § 32-1-204, 13 C.R.S. (1984 Supp.).

The board of county commissioners must review the service plan according to certain statutory criteria. Judicial review of the board of county commissioners' decision is provided, and the court may reverse the decision if it finds that the board's action was arbitrary, capricious, or unreasonable. § 32-1-206, 13 C.R.S. (1984 Supp.).

If the proposed district is situated exclusively within the boundaries of an existing municipality, however, the Act requires only that the petition be approved by resolution of the governing body of the municipality before it is submitted to the district court pursuant to section 32-1-301, 13 C.R.S. (1984 Supp.). The Act does not detail the information which is required to be submitted in the initial petition, nor does it contain any standards against which the petition must be judged by the governing body. Further, the Act does not require notice or a public hearing as a prerequisite to approval of the initial petition by resolution. Finally, the Act does not provide for judicial review of the municipality's decision to approve or disapprove an initial petition.

After the board of county commissioners has approved a service plan or an initial petition has been approved by the city council, the district proponents must file a petition for organization in the district court. The petition must be signed by not less than 10 percent or 100 of the taxpaying electors of the proposed district, whichever number is smaller. It must also contain information concerning the type of service to be provided, the proposed improvements and their costs, and the location of the district. § 32-1-301, 13 C.R.S. (1984 Supp.).

The court must set a hearing and must give notice by publication of the pendency of the petition, the purposes and boundaries of the proposed district, and the time and place of the hearing. § 32-1-304, 13 C.R.S. (1984 Supp.). In addition, written notice must be provided to any affected board of county commissioners and to any interested party who has appeared and presented its objections before the board. § 32-1-304, 13 C.R.S. (1984 Supp.); § 32-1-206(2), 13 C.R.S. (1984 Supp.). If the initial petition was approved by a municipality, however, it appears that notice by publication is the only form of notice required. That is, the Act does not specifically provide that persons who objected to the petition at the municipal level have a right to written notice of the district court proceeding.

At least ten days before the hearing, an owner of real property situated within the proposed district may file a petition for exclusion of the property. The petition must state the reasons that the property should not be included in the district. § 32-1-305(3), 13 C.R.S. (1984 Supp.).

At the hearing, the court must first determine that the required number of taxpaying electors of the proposed district have signed the petition for organization. The court must then consider any petitions for exclusion of property to determine whether "in the best public interest" the property should be included or excluded from the proposed district. If the court finds that the petition for organization has sufficient signatures, and that the allegations of the petition are true, the court must then order that the question of the organization of the district be submitted to the taxpaying electors. Upon a majority vote in favor of the special district, and a determination that the election was held in

accordance with the Act, the district court shall declare the special district organized. This order is final and no appeal or other remedy is available, except that the state may bring a quo warranto action within thirty days after entry of such order. § 32–1–305, 13 C.R.S. (1984 Supp.).

### B

■ Here, the proposed district is situated entirely within the boundaries of the City of Lakewood. Therefore, the Act only required that the city council approve the initial petition by resolution before a petition for organization could be submitted to the district court. The opponents first contend that the city council's action in approving the initial petition was arbitrary, capricious, and an abuse of discretion, and that judicial review should be available pursuant to C.R.C.P. 106(a)(4).

Certiorari review pursuant to C.R.C.P. 106(a)(4) is only available when "an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy." The district court found that the city council's action was quasi-legislative, and thus no certiorari review was available. We agree.

■ The predominant consideration in determining whether a governmental body has exercised a quasi-judicial function is the nature of the decision rendered and the process by which the decision is reached. *Cherry Hills Resort Dev. Co. v. Cherry Hills Village,* 757 P.2d 622 (Colo.1988). Quasi-legislative action is usually reflective of some public policy relating to matters of a permanent or general character, is not normally restricted to identifiable persons or groups, and is usually prospective in nature. Further, quasi-legislative action requires the balancing of questions of judgment and discretion, is of general application, and concerns an area usually governed by legislation. *Landmark Land Co. v. City & County of Denver,* 728 P.2d 1281 (Colo.1986), *appeal dismissed sub nom. Harsh Inv. Corp. v. City & County of Denver,* 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987); *City & County of Denver v. Eggert,* 647 P.2d 216 (Colo.1982).

■ Quasi-judicial action, on the other hand, generally involves a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question. *Cherry Hills,* 757 P.2d at 625. The existence of a statute or ordinance mandating notice and a hearing is evidence that the governmental decision is to be regarded as quasi-judicial. *Id.* at 627.

Here, the city council made a political decision as to whether the City would perform certain services or would give its initial approval to the creation of a metropolitan district to perform such services. This decision is reflective of public policy and requires the balancing of questions of judgment and discretion. Further, the decision is prospective in nature, affects a large area within the municipality, and concerns a subject usually governed by legislation. Moreover, the city council's action did not involve a determination of the rights, duties, or obligations of specific individuals by applying presently existing legal standards or policy considerations to past or present facts. The city council's action did not create a special district, and thus had no immediate effect on anyone's rights and liabilities. Further, the decision does not pertain only to the immediate parties, as quasi-judicial acts typically do. Nor was the city council required, by statute or ordinance, to apply presently existing legal standards or policy considerations to past or present facts developed at the hearing. Finally, although the city council made provisions for notice and a public hearing, it was not required to do so by statute or preexisting ordinance.

The fact that different procedures are provided when the initial petition is presented to a board of county commissioners, including notice and hearing requirements and specific standards, does not make the city council's action quasi-judicial.

Section 32–1–102(2), 13 C.R.S. (1984 Supp.), states that the procedures contained in Part 2 of the article "are necessary for the coordinated and orderly creation of special districts ... to prevent unnecessary proliferation and fragmentation of local government and to avoid excessive diffusion of local tax sources." Such problems are not as likely to arise when a district is formed exclusively within the boundaries of a municipality.

Further, county governments and municipal governments are often treated differently concerning the formation of municipal corporations. For example, the inhabitants of an unincorporated portion of a county containing more than five hundred registered electors may incorporate a municipality without obtaining county approval, whereas inhabitants of an existing municipality may not incorporate an independent municipality. § 31–2–101, 12B C.R.S. (1986). Because the legislature was addressing different concerns when it required notice, hearing and application of standards when the creation of a special district is to be approved by the board of county commissioners, these procedures do not mandate a finding that the city council's action was quasi-judicial in nature.

We conclude that the city council's action in approving the initial petition was legislative in nature, and that the opponents were not entitled to certiorari review pursuant to C.R.C.P. 106(a)(4). Therefore, the district court properly dismissed this claim for relief.

### III

The opponents allege that the city council's action and certain portions of the Act violate the due process provision of both the Colorado and the United States Constitutions.

### A

■ The opponents first contend that they were denied due process because they were not afforded adequate notice of the city council hearing and were not afforded a meaningful opportunity to be heard. The short answer to this contention is that when a municipal body is acting in a quasi-legislative rather than a quasi-judicial capacity, there is no constitutional requirement for notice and a hearing. *Cottrell v. City & County of Denver*, 636 P.2d 703 (Colo.1981). Therefore, the granting of notice and an opportunity to be heard by the city council was gratuitous, and not constitutionally required.

Nor does the lack of notice and hearing requirements in the statute deprive the opponents of due process of law. The General Assembly has plenary power to create quasi-municipal corporations such as those provided for in the Act. *Aurora v. Aurora Sanitation Dist.*, 112 Colo. 406, 149 P.2d 662 (1944); *People v. Lee*, 72 Colo. 598, 213 P. 583 (1923). Creation of such quasi-municipal bodies may be accomplished by several methods. First, the legislature may establish a district directly. *See Aurora v. Aurora Sanitation Dist.*, 112 Colo. 406, 149 P.2d 662 (1944); *People v. Letford*, 102 Colo. 284, 79 P.2d 274 (1938); *People v. Lee*, 72 Colo. 598, 213 P. 583 (1923); *Milheim v. Moffat Tunnel Improvement Dist.*, 72 Colo. 268, 211 P. 649 (1922). Second, the legislature may provide for the formation of a district only upon the happening of events which are future and uncertain, such as approval by local government or by vote of the people. *People v. Fleming*, 10 Colo. 553, 16 P. 298 (1887).

■ Whether owners of land have any right to participate in the formation or administration of a quasi-municipal corporation is a political question only. *People v. Lee*, 72 Colo. 598, 213 P. 583 (1923). The legislature is not constitutionally required to provide landowners with notice, the right to be heard, the right to vote, or the right to appeal on the issue of the establishment of a quasi-municipal corporation or on the issue of whether a city council should give preliminary approval to a petition to form a special district. *See People v. Letford*, 102 Colo. 284, 79 P.2d 274 (1938); *Milheim v. Moffat Tunnel Improvement Dist.*, 72 Colo. 268, 211 P. 649 (1922); *People v. Lee*, 72 Colo. 598, 213 P. 583 (1923); *People v. Fleming*, 10 Colo. 553, 16 P. 298 (1887); *see*

*also Fort Collins–Loveland Water Dist. v. Fort Collins,* 174 Colo. 79, 482 P.2d 986 (1971) (by analogy, legislature has unlimited power over annexation of territory by municipalities, thus legislative denial of the rights to notice and to vote upon annexation is not a denial of due process of law).

Based on the foregoing analysis, it is clear that even if the opponents were not afforded an adequate notice or opportunity to be heard, no due process violation has occurred. The General Assembly was not constitutionally mandated to impose a notice and hearing requirement on the city council's approval of the initial petition to organize the district, nor was the city council itself required to provide such protections.

### B

The opponents next contend that they were deprived of due process because the Act contains no standards to limit and channel the city council's discretion in approving the initial petition. Their argument is twofold: First, they argue that the statute is an unconstitutional delegation of legislative authority [6] and, second, that the lack of standards in the statute violates due process.

■ Under the non-delegation doctrine, legislation must provide sufficient "standards and safeguards and administrative standards and safeguards, in combination, to protect against unnecessary and uncontrolled exercise of discretionary power." *Cottrell,* 636 P.2d at 703. At the time this case arose, the Act did not contain any standards which the governing body of a municipality must consider in deciding whether to approve an initial petition for the organization of a special district. Nor had the city council enacted any guidelines for approval or disapproval of a petition at that time.[7]

We first point out that the General Assembly did not delegate to the city council the power to create a special district. Rather, the city council was only given the authority to take the first step in the formation process. That is, the city council may either approve or disapprove an initial petition when the proposed district is situated entirely within the municipal boundaries of the city. After such a preliminary determination, the legislature has required several additional steps which must be taken before a district may be formed. Part 3 of the Act requires that a petition for organization must be submitted for approval by a district court, and that thereafter the taxpaying electorate must vote on the proposal. Only then may a special district be established.

The trial court found that the Act contained implicit standards by which the city council was to make its determination. As an exercise of its police power, the city council was obligated "to act reasonably to promote and preserve the public peace, health and safety." Further, the trial court found that the subsequent procedural steps provided sufficient safeguards "to protect against unnecessary and uncontrolled exercise of discretionary power." *Cottrell,* 636 P.2d at 703. We agree.

The decision on how best to provide necessary services to the inhabitants of a municipality is an exercise of the police power. When police power is delegated, it is often impracticable for the General Assembly to fix rigid standards to guide the city council

---

6. Although the opponents did not specifically raise the delegation doctrine in their complaints, it appears that their allegation that the lack of standards within the statute deprived them of due process was intended to encompass the delegation issue. The delegation issue was fully briefed both at the trial court and in this court. Moreover, the trial court's determination of the standards issue was based on an application of the delegation test that we adopted in *Cottrell v. City & County of Denver,* 636 P.2d 703 (Colo.1981). Accordingly, we will address the merits of the delegation issue.

7. In 1985, the legislature amended the Special District Act to provide that the governing body of a municipality must use the same criteria as that used by the board of county commissioners in evaluating a petition. The Act still does not mandate notice and a hearing when the petition is presented to a municipality. The City of Lakewood also adopted criteria by which a petition to organize a special district must be judged.

without destroying the flexibility necessary to effectuate legislative goals in dealing with complex economic and social problems. *People v. Lowrie,* 761 P.2d 778 (Colo.1988); *Elizondo v. Motor Vehicle Div.,* 194 Colo. 113, 570 P.2d 518 (1977). Thus, when police power is involved, we have held that "reasonableness" is a sufficient standard to guide the exercise of such power. *Cottrell,* 636 P.2d at 703; *Asphalt Paving Co. v. Board of County Comm'rs,* 162 Colo. 254, 425 P.2d 289 (1967).

Further, the subsequent procedural steps required in the formation of the district provide substantial protections to persons adversely affected by the city council's action. The district court must determine whether the petition to organize is in order, which includes a determination as to whether a sufficient percentage of the taxpaying electorate has signed the petition, and the legitimacy of those signatures. § 32–1–305(1), 13 C.R.S. (1984 Supp.). Moreover, landowners may request exclusion of their real property before the district court, and such property may be excluded from the special district if the court determines that it is in the best public interest to do so. § 32–1–305(3), 13 C.R.S. (1984 Supp.). Finally, the question of whether the district should be organized must be submitted to a vote by the taxpaying electorate. This election, in effect, is a review of the city council's decision by those who will be affected by the formation of the special district. We believe that the trial court was correct in finding that the standards implicit in the Act, in conjunction with the subsequent procedural steps provided, provide adequate safeguards against the dangers of an overly broad delegation of legislative power.

### C

The opponents next argue that even if the Act does not effect an improper delegation, they were deprived of due process of law because of the lack of standards in the Act. In essence, they allege that the statute deprives them of due process "as applied." *See Elizondo v. Motor Vehicle Div.,* 194 Colo. 113, 570 P.2d 518 (1977).

We have held, in several cases, that due process is violated when a local government or an administrative agency makes a decision in the absence of sufficient standards. In such cases, sufficient standards were necessary to give fair notice of the criteria to be used so that a case may be prepared, to ensure that all decision makers are using uniform criteria, and to provide a meaningful basis for judicial review. *See Sears, Roebuck & Co. v. Baca,* 682 P.2d 11 (Colo.1984); *Hide–A–Way Massage Parlor v. Board of County Comm'rs,* 198 Colo. 175, 597 P.2d 564 (1979); *Elizondo v. Motor Vehicle Div.,* 194 Colo. 113, 570 P.2d 518 (1977). However, each of these cases involved the exercise of quasi-judicial decision making, which requires that due process be afforded to the person who may be affected by the decision. Because the city council's action was quasi-legislative, and because of the General Assembly's plenary power to create municipal corporations, we have held that no process was due to the opponents in this instance. Therefore, we need not examine the sufficiency of the standards in a due process context.

### D

The opponents contend that even if the city council's action was quasi-legislative, they were entitled to judicial review as to whether the city council abused its discretion in their declaratory judgment action. Although narrow review of quasi-legislative action is available in a declaratory judgment action, *see Bruce v. School Dist. No. 60,* 687 P.2d 509 (Colo.App.1984), this issue was not raised at the trial level. Therefore, we do not address the appropriateness of the city council's decision to approve the petition.

### IV

The opponents contend that sections 32–1–103(5); 32–1–305(4)–(6); and 32–1–802, 13 C.R.S. (1984 Supp.), are unconstitutional because they deny a corporate entity the right to vote on the formation of a proposed special district, in violation of the equal protection clause of the United States Constitution. The trial court held

that the opponents' challenge to the election process was premature because no actual petition for organization was pending before the district court, and thus there was no controversy existing at that time. We agree.

At present, the only action that has been taken is a first step approval by the Lakewood City Council. There is no indication whether subsequent steps will be taken so as to require an election on the formation of the proposed district. We cannot predict whether a petition for organization will be submitted to the district court, whether the opponents' real property will be excluded from the proposed district, or whether the district court will determine that the petition is sufficient so as to necessitate an election. Under such circumstances, our examination of the election process would be advisory. Therefore, we approve the district court's determination that the opponents' equal protection claim was premature.

The judgment of the district court is affirmed.