## No. 10,547.

PEOPLE, EX REL. SETTERS, ET AL. v. LEE, ET AL.

Decided February 27, 1923.

Proceding in quo warranto.

*Information Dismissed.*

1. Conservancy Districts—*Petition—Sufficiency.* Under the provisions of the conservancy district act, S. L. 1922, there is no necessity for the determination of the sufficiency of a petition for the formation of a district prior to the publication of notice. Such determination may be had at the time of the hearing.

2. Constitutional Law—*Process—Conservancy District Notice.* Notice of hearing upon a petition to form a conservancy district under the provisions of chapter 1, S. L. 1922, is not a process within the meaning of section 30, article VI of the Constitution.

3. Conservancy Districts—*Notice.* Notice of hearing upon a petition for the formation of a conservancy district, held sufficient.

4. Notice—*Sufficiency.* Mere informalities will not vitiate a notice so long as they do not mislead, and the notice gives the necessary information to the proper parties.

5. Conservancy Districts—*Organization—Protests—Court Powers.* The findings of the court in matters pertaining to petitions and protests, in the organization of conservancy districts, are conclusive.

6. *Petitions—Signers—Corporations.* Where a land owning corporation signed a protesting petition in a proceeding for the organization of a conservancy district, as "trustee for the use of its stockholders," with a typewritten list of its stockholders attached, this did not make the stockholders signers, and is construed as the signature of but one owner.

7. Constitutional Law—*Special Commission—Conservancy Districts.* The board of directors of a conservancy district is not a "special commission" as that term is used in section 35, article V, of the Constitution.

8. Conservancy Districts—*Public Purposes.* Public works constructed under the conservancy district act of 1922, are of a, public nature and for public purposes.

9.  CONSTITUTIONAL LAW—*Conservancy Districts—Assessments—Due Process.* The assessment provisions of the conservancy district act of 1922, held not to be in contravention of the due process clause of the federal and state Constitutions.

10.  MUNICIPAL CORPORATIONS—*Legislative Power to Create.* Legislatures have the right to create quasi municipal corporations and provide for their officers and manner of administration.

11.  CONSERVANCY DISTRICTS—*Formation—Appeals.* There can be no constitutional objection to the conservancy district act of 1922, on the ground that it provides that no appeal or writ of error shall lie to review the order establishing a district.

12.  CONSTITUTIONAL LAW—*Conservancy Districts—Governmental Powers.* The conservancy district act of 1922, is not repugnant to article III of the Constitution, as delegating legislative functions to the judiciary, in the provision for the appointment of district officers by the court.

13.  *Taxation—Special Assessment.* The constitutional limitation of section 8, article XI, concerning taxation, does not apply to improvements to be paid for out of special assessments.

14.  CONSERVANCY DISTRICTS—*Constitutional Law—Special Assessments.* Special assessments for conservancy district purposes are not a tax within the meaning of section 3, article X of the Constitution, concerning taxation.

15.  CONSTITUTIONAL LAW—*Conservancy Districts—Twentieth Amendment.* The legislature has authority to form a conservancy district involving parts of cities and counties, and the conservancy district act of 1922, is not in violation of article XX of the Constitution.

## Original Proceeding.

Mr. VICTOR E. KEYES, attorney general, Mr. RUSSELL W. FLEMING, attorney general, Mr. JOHN H. VOORHEES, for plaintiff.

Mr. CHARLES M. ROSE, Mr. LEO P. KELLY, Messrs. PERSHING, NYE, FRY & TALMADGE, for respondents.

*En banc.*

MR. JUSTICE ALLEN delivered the opinion of the court.

THIS is an original proceeding in quo warranto. It was instituted in this court in the name of The People of the State of Colorado by the Attorney General, upon the relation of two owners of lands within the territory of a district hereinafter referred to as The Pueblo Conservancy District. The object of this action, according to the prayer of the petition, is to exclude from office the three persons, named as respondents, who are acting as directors of the Conservancy District above mentioned, and to have this court declare the office itself illegal and void, or non-existant. The respondents have filed a plea and answer to the complaint or petition, alleging, among other things, the organization of The Pueblo Conservancy District under the Conservancy Act of Colorado, and their, the respondents', appointment as directors of such district. The case is before us for determination upon the demurrer, filed by plaintiff, to the plea and answer of respondents. The case is submitted for final determination upon such demurrer.

From the pleadings in this case, and also from the briefs, the relief sought by plaintiff is asked upon two main propositions, asserted by plaintiff, namely, (1) that the act under which the district was formed is unconstitutional, and (2) that, whether constitutional or not, the district court of Pueblo County had no jurisdiction to make the order which created and established the district. The last named contention will be discussed first, and the discussion necessitates a reference to some parts of the statute involved before taking up the argument of the plaintiff.

The Conservancy Act of Colorado may be found in Chapter CLXXIV of the Compiled Laws of Colorado of 1921, subdivision III, entitled "Conservancy Districts," beginning with section 9515 and ending with section 9589.

The General Statutes are included in the Compiled Laws of Colorado, 1921, commencing at page 217. The Conservancy Act of Colorado also appears as Chapter 1 of the

Laws passed by the Extraordinary Session of the twenty-third General Assembly.

Section 1 of the Act (Section 9515 C. L. 1921) defines terms used in the statute. Section 2 (Section 9516 C. L. 1921) vests in district courts jurisdiction to establish conservancy districts. Section 3 (Section 9517 C. L. 1921) provides that "before any conservancy district shall be established under this act, a petition shall be filed in the office of the clerk of the court vested with jurisdiction, in a county in which all or part of the lands embraced in said proposed conservancy district are situated." The section further provides how the petition may be signed and what it "shall set forth." Section 4 (Section 9518 C. L. 1921) relates to the bond of petitioners.

Section 5 of the Act (section 9519 C. L. 1921) provides, among other things, as follows: .

"Immediately after the filing of such petition the court wherein such petition is filed or a judge thereof in vacation, shall by order fix a place and time, not less than sixty days nor more than ninety days after the petition is filed, for hearing thereon, and thereupon the clerk of said court shall cause notice by publication (Schedule Form 1) to be made of the pendency of the petition and of the time and place of the hearing thereon;  *  *  *."

The answer of the respondents shows, and the demurrer admits, that a petition for the establishment of a conservancy district was filed in the district court of Pueblo County, on May 26, 1922. The petition prayed that the territory therein described be organized and constituted a conservancy district, under the corporate name of "The Pueblo Conservancy District."

Further steps were taken toward the organization of the district, and on September 14, 1922, the court rendered its decision upon the hearing on the petition, and certain objections which had been filed thereto, and entered an order creating The Pueblo Conservancy District.

Enough has been stated thus far, for the purpose of disposing of the first contention made by plaintiff which is,

that the court had no jurisdiction to enter the order because, as it is stated in its brief, "there was no determination, judicial or otherwise, * * * as to the sufficiency of said petition prior to the publication of notice of hearing thereon." The answer to this contention is that there was no necessity for a determination of the sufficiency of the petition "prior to the publication of notice." Such determination may be had, and it was had in this case, at the time of the hearing. Section 6 of the Act (Section 9520 C. L. 1921) provides, among other things, as follows:

"Upon the said hearing, if it shall appear that a petition for the organization of a conservancy district has been signed and presented, as hereinbefore provided, in conformity with this act, * * * the court shall, by order duly entered of record, adjudicate all questions of jurisdiction, declare the district organized and give it a corporate name. * * *"

On the same day that the petition was filed in the district court, the court ordered the publication of the notice required by section 5 of the Act, hereinbefore quoted. The notice was duly published. It was not given in the name of the people, and this fact gives rise to the second contention of plaintiff, namely, that the notice is a "process" within the meaning of Section 30 of Article VI of the Constitution of the State of Colorado, which provides that, "All process shall run in the name of 'The People of the State of Colorado,'" and that, therefore, the notice was void. This contention cannot be sustained, for we hold that the notice in question was not a "process" within the meaning of the constitutional provision cited, and was not, therefore, vitiated by the fact that it did not run in the name of the people. The Constitution of the State of Illinois contains the same provision, and the meaning of the word "process" as found therein was explained in *Curry v. Hinman*, 11 Ill. 420, decided before the adoption of our constitution. The court there said:

"This object is manifest. It was to provide a name or title by which the sovereign power of the state should be

designated.   In England, the King is supposed to be the fountain of justice and the source of power, and that sovereign power is there designated by his name and title. * * * Where, by the law of England, whence we have mainly borrowed our system of jurisprudence, writs or process are issued, or other proceedings are had expressly in the name of the king, here they should run in the name of 'The People.' * * * The meaning is not that everything shall be done expressly in the name of 'The People,' but that nothing shall be done in any other name.   Whenever the name of the sovereign power is invoked or expressed, that shall be its designation."

This language was approved and quoted in *McKenna v. Cooper,* 79 Kan. 847, 101 Pac. 662, where the court said:

"The word 'process' has many meanings.   * * *   In the constitution process which at the common law would have run in the name of the king is intended."

The next contention of plaintiff is that the notice is insufficient and void because not in the form required by the Conservancy Act.   This contention is not well founded. The Act does not require any particular form of notice. Section 75 thereof (Section 9589 C. L. 1921) gives forms which shall "illustrate the character of the procedure." For a notice of hearing on the petition, it gives a form having the following caption:

"NOTICE OF HEARING ON PETITION.
To All Persons Interested:
Public Notice is Hereby Given:"

The notice given in the proceedings below was in the same form, except that it omitted the second line, the words "To All Persons Interested."   Such omission did not make the notice misleading.   Persons interested in the matter of the organization of a conservancy district would be as likely to find and read the notice if it omitted the second line of the form suggested by the statute as if it included the same.   The general rule in respect to notices is that mere informalities do not vitiate them so long as they do not mislead, and give the necessary information to the

proper parties. 29 Cyc. 1117. The plaintiff cites *Ahern v. Directors,* 39 Colo. 409, 89 Pac. 963, where we held a notice defective, but there it was addressed "To the Board of County Commissioners." This made it misleading, as it was a notice intended for land owners. The notice involved in the instant case is not misleading. We hold it sufficient.

The plaintiff contends, in effect, that the court was without jurisdiction to make an order establishing the conservancy district because, as it alleges, the protesting petitions were signed by a majority of the land owners within the district or proposed district. The district court found to the contrary. In the examination of this point, it is noted that section 6 of the Act (Section 9520 C. L. 1921) provides that after the filing of a petition for the organization of a conservancy district, a petition may be filed by a majority of the owners of the land in the proposed district, protesting the creation of the proposed district. The section further provides that if the protesting petition is not signed by a majority of the owners of land, such petition shall be dismissed, and if the protesting petition is so signed by a majority of the land owners, then the court shall dismiss the original petition praying for the creation of the district. It is further provided as follows:

"The finding of the court upon the question of the total number of the owners of the land in said proposed district and upon the question of the number of the owners of the land situate in said proposed district signing said protesting petition, the genuineness of the signatures, and all matters of law and fact incidental to such determination shall be final and conclusive on all parties in interest whether appearing or not."

The district court having found that a majority of the land owners did not sign the protesting petition, its finding is conclusive in the instant proceeding. *State v. Fleming,* 158 Mo. 558, 562, 59 S. W. 119; *State v. Albany Drainage Dist.,* (Mo.), 234 S. W. 339. See also *Gillum v. Town of Rifle,* 70 Colo. 198, 197 Pac. 1017; *Londoner v. Denver,* 52 Colo. 15, 119 Pac. 156.

Even if the question of the number of signers of the protesting petition could now be determined, we would be obliged to find, as did the district court, that such signers did not constitute a majority of the land owners of the proposed district. The plaintiff counts as signers of the protesting petition, the stockholders of certain mutual ditch companies. These stockholders did not sign personally. The corporations signed the protesting petition, and added after the corporate name the words, "Trustee for the use of its stockholders," and a typewritten list of the stockholders. This did not make such stockholders signers. They cannot be counted, or regarded as signers, unless they sign individually. Each signer, of course, must be a land owner. If a land owning corporation signs, it counts as but one owner.

The petition in quo warranto in this case attacks the constitutionality of the Colorado Conservancy Act. It is alleged that the act violates several sections of our Constitution. We first proceed to take up the contention that the act is in violation of Section 35, Article V of the Constitution of Colorado, which provides that,

"The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, * * * or to levy taxes or perform any municipal function whatever."

This contention is evidently made on the theory that there is a "special commission" provided by the Conservancy Act which is given power to make and supervise a public improvement and levy assessments.

The act provides for the appointment by the district court of a board of directors. In section 13 thereof it is provided that,

"The Board of Directors shall have full power and authority to devise, prepare for, execute, maintain and operate any or all works or improvements necessary or desirable to complete, maintain, operate and protect the works provided for by the Official Plan, * * *."

The "Official Plan" is the plan which may be adopted for the improvements for which the district was created. The board of directors is the body that prepares, and upon a hearing adopts the plan. It also has the power to levy assessments, to borrow money, and otherwise act for the conservancy district. Certain duties relating to appraisals are imposed on the board of appraisers. The governing body of the district is the board of directors. The act contemplates and provides for the permanent existence of that board. It is as much the governing body of the district as the Moffat Tunnel Commission is of the Moffat Tunnel Improvement District, and is as permanent. In *Milheim v. Moffat Tunnel Improvement District,* 72 Colo. 268, 211 Pac. 649, we held the Tunnel Commission not to be a "special commission" within the meaning of the Constitution, and for the reasons therein stated, we must now hold that the board of directors of a conservancy district is not a "special commission."

The petition in this case also raises the question whether the assessments provided by the act are for a public purpose. There can be no doubt that the public works which may be constructed under the act will be of a public nature and for public purposes. This has been decided with reference to the Ohio Conservancy Act in *Orr v. Allen,* 245 Fed. 486. Our own cases support the same conclusion. *Tanner v. Treasurer,* 35 Colo. 593, 83 Pac. 464, 4 L. R. A. (N. S.) 106; *Milheim v. Moffat Tunnel Improvement District, supra.*

It is alleged in the petition that the Conservancy Act is in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States, and of Section 25, Article II of our Constitution, providing that no person shall be deprived of life, liberty or property without due process of law. It is also claimed that the Act denies to citizens "the equal protection of the law."

The act provides a detailed system of appraisal of benefits of property within the district, a detailed report of a

public character by the appraisal commissioners, and a hearing before the court, with a jury if desired. In the matter of assessments, and the right to be heard thereon, the Conservancy Act as fully protects the constitutional rights of the people in the district as does the Moffat Tunnel Law with reference to tax payers in the district therein created. So far as assessments are concerned, under the authority of the opinions in *Milheim v. Moffat Tunnel Improvement District, supra,* the act now under consideration must be held. constitutional.

Whether owners of land have any right to participation in the administration of quasi municipal corporations "by vote or otherwise" is a political question merely. The right of the legislature to create a quasi municipal corporation and provide for the manner of its administration and the personnel of its officers in any manner it may see fit, is well established. *People v. Earl,* 42 Colo. 238, 94 Pac. 294. Complaint is made of the fact that the Conservancy Act limits the protesting petitions to a "denial of the statements in the petition" to create the district. There is nothing unconstitutional in such limitation. With such limitation the objectors are given full opportunity to be heard upon the original petition for the creation of the district. The legislature could have established a Conservancy District by direct enactment, as it established the Moffat Tunnel Improvement District, and the act would have been valid even if it made no provision for protesting petitions of any kind.

There can be no constitutional objection to the Conservancy Act because it provides (in Section 6 thereof) that no appeal or writ of error shall lie to review the order establishing the district. There is no constitutional right of appeal, or to a writ of error. Speaking of the establishment of drainage districts, it is said in 19 C. J. 667, that the legislature may, in its discretion, and in the absence of constitutional inhibition, limit the rght of appeal or deny it altogether. The right of appeal is not essential even in the matter of assessments. 12 C. J. 1264, note 30. For the greater reason there is no right of appeal, under the con-

stitution, in the matter of the necessity of the improvement district, or the boundaries thereof, because in such matters there is not even a constitutional right to be heard.    12 C. J. 1263.

The Ohio Conservancy Act, similar in its provisions to our statute, was held not to violate the Fourteenth Amendment to the Federal Constitution, including the due process clause, in *Orr v. Allen,* 245 Fed. 486, affirmed in *Orr v. Allen,* 248 U. S. 35, 39 S. Ct. 23, 63 L. Ed. 109.

One of the principal contentions of plaintiff is stated in its brief as follows:

"The grounds of objection to the constitutionality of the Conservancy Act set forth in subdivision (c) and (d) in the Petition herein, as to the power conferred on the District Courts, the objection is that the Act delegates legislative and administrative functions to the Court, in the organization, management and operation of the Conservancy Districts, and allows appeals from judicial decisions of the Court to a jury a non-judicial body, thus making the functions of the Court non-judicial and constituting and conferring upon the Court the duties of a special commission to act with and through its Directors, appraisers and specially appointed officers in the making and supervising of municipal improvements."

In a former part of this opinion, we state that the Act creates no "special commission" in the sense that that term is used in the Constitution.    There is left to be considered, therefore, the objection that the Act confers legislative functions upon the court.    In this connection, it is claimed that the act violates Article III of our Constitution, which provides that the powers of the government of this state are divided into the three departments, and that no person charged with the exercise of powers properly belonging to one department shall exercise any power properly belonging to another department.

The provisions of the Conservancy Act relating to the hearing upon the petition to create a district and the protesting petition or petitions, and the making of an order

dismissing either the original petition or the protesting petition, and in case the proper petition has been filed and a protesting petition has either not been filed or else dismissed, the making of an order establishing the conservancy district, confer upon the court power which cannot be otherwise considered than as judicial. One of the alleged legislative powers conferred upon the district court, is the power to appoint the three directors of the conservancy district, and also to appoint three appraisers.

The power of appointing officers is more executive than it is legislative. 12 C. J. 874. Such power, taken by itself, is not judicial, but when it is incidental to the exercise of judicial functions, as it is under the Conservancy Act of Colorado, its existence does not vitiate the statute. In the brief of the attorney general and counsel for relators it is asserted that under the act the district court in perpetuity is made the head of a political subdivision of the state. This is equivalent to saying that the court is given administrative powers and functions.

Statutes which vested in the courts the power to appoint drainage commissioners have been held constitutional. 19 C. J. 625. In *Scott v. Brackett,* 89 Ind. 413, it was said that an act providing for the appointment of commissioners of drainage is not one imposing on the court legislative and executive duties. The court said:

"The fact that they are appointed by the court, * * * does not render them mere agents of the court, nor does it impose upon the court the duties to be discharged by them."

Our conservancy act is similar to that of Ohio, and the latter was held constitutional as against the objection now being considered. *Miami County v. Dayton,* 92 Ohio St. 215, 110 N. E. 726.

In *State ex rel. Skordahl v. Flaherty,* 140 Minn. 19, 167 N. W. 122, it was held that a statute authorizing the courts to organize drainage and flood control districts, and to appoint a board of directors to carry the purposes of the act into effect, is not unconstitutional because of an unwar-

ranted delegation of legislative functions and powers to the judiciary.

Conservancy or flood control districts stand on the same footing as drainage districts. This seems obvious. It is therefore pertinent to quote the following from 19 C. J. 625:

"The legislature having authority to provide for the construction of drains and the organization of drainage districts, in the absence of constitutional provision to the contrary, this general power carries with it, by necessary implication, all other powers necessary to make the general authority effective and to accomplish the results intended. Hence, the legislature may designate the officers to construct and maintain drains and the mode of their selection. The power to appoint drain commissioners may be conferred upon the governor, or, the legislature may provide for the appointment of drainage officers by  *  *  *  the courts  *  *  *."

In *Travelers' Insurance Co. v. Industrial Commission,* 71 Colo. 495, 208 Pac. 465, we announced the rule that before a statute can be held unconstitutional as delegating legislative power, it must clearly appear that the power in question is purely legislative. This court there also quoted with approval the following from *State v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523:

"The constitutional division of all governmental powers into legislative, executive and judicial is abstract and general. Their complete separation in actual practice is impossible. The many complex relations created by modern society and business have produced many situations which can be adequately met only by vesting in the same administrative officers or bodies powers inherently partaking, to some extent, of any two or all of these three functions."

Upon the authorities above cited, we conclude that the act does not violate Article III of our Constitution. It does not delegate legislative or administrative powers to the district court, within the meaning of the constitutional prohibition thereof, since judicial powers are vested by the

statute in the court organizing the district, and the administrative powers complained of are incidental to the judicial functions vested.

The petition and the briefs raise the further question whether the Conservancy Act is in violation of section 8, article XI of the Constitution of Colorado. The material parts of that section, so far as this case is concerned, read as follows:

"No city or town shall contract any debt * * * except by means of an ordinance * * * providing for the levy of a tax, not exceeding twelve (12) mills on each dollar of valuation of taxable property * * *. But no such debt shall be created unless the question of incurring the same shall * * * be submitted to a vote of such qualified electors * * *. But the aggregate amount of debt so created, together with the debt existing at the time of such election, shall not at any time exceed three per cent. of the valuation last aforesaid."

The plaintiff proceeds on the theory that this section is violated because the Conservancy Act (Section 26 thereof) provides as follows:

"The Board of Appraisers shall also appraise the benefits and damages, if any, accruing to cities, towns, counties and other public corporations, as political entities, and to the State of Colorado, and the same shall be taken and considered the same as benefits or damages, as the case may be, to land or other property."

Citing the foregoing paragraph, the attorney general and counsel for relators say in their brief:

"From which it will be observed, upon the certification of the appraisal of benefits so made the debt of the town, city or county or other public corporation, will or may be increased in violation of the Constitutional provision."

The debt, if any, which will be incurred by a city or town, will not be such debt as is contemplated by the constitutional provision above quoted. The constitutional limitation does not apply to improvements to be paid for out of a special assessment. 28 Cyc. 1542. This would be

true even if the special assessment would be levied by the particular town or city itself. For the greater reason it is true where the assessment is made by the state, or an agency of the state, for state purposes.

The debt or obligation resting on a city by reason of the levy of an assessment made against it by the Conservancy District would not be met by a special assessment of such city itself, but the city must pay its assessment by the levy of a tax at a uniform rate upon all the taxable property within its boundaries. Section 55 of the Act; Section 9569 C. L. 1921.

Such taxation, and the indebtedness involved, is not such taxation and indebtedness as is contemplated by Section 8, Article XI of the constitution, above quoted. That section applies only to taxation and indebtedness incurred for the governmental purposes of the city. 25 R. C. L. 92. Here the tax is for the purpose of paying an assessment to carry out the purposes, not of the city, but of the Conservancy District. See *Williams v. Wedding,* 165 Ky. 361, 176 S. W. 1176.

In 19 R. C. L. 987, it is said:

"A constitutional limitation upon the indebtedness of public corporations applies to each such corporation as a distinct entity and not as a portion of a larger body."

In *People v. Honeywell,* 258 Ill. 319, 101 N. E. 571, applying the rule last above stated, it was held that the fact that property subject to assessment for drainage benefits is within the corporate limits of a municipality which is indebted up to the constitutional limit does not prevent the levy of such assessment by the drainage district; that the constitutional limitation upon the extent of corporate indebtedness applies to each municipal corporation singly, and is a limitation against becoming indebted for general corporate purposes. In 19 C. J. 718 it is said that an assessment for the construction or improvement of a drain may be made against counties, townships, or municipal corporations. That an assessment for special benefits, to pay for a public improvement, may be levied against a county by the city constructing such improvement, was held in *County*

*Commissioners v. City,* 66 Colo. 111, 180 Pac. 301.

Under the authorities above cited, we hold that there is no violation of Section 8, Article XI of the Constitution of Colorado, in the act in question.

The petition in quo warranto in this case pleads a violation of Section 3, Article X of our constitution, which provides that,

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation * * * of all property, real and personal, * * *."

The conservancy act provides for the assessment of benefits, and plaintiff asserts that if the levy of an assessment is the levy of a tax, it would be in violation of the foregoing constitutional provision, citing *Re Palmer v. Way,* 6 Colo. 106. The same question arose in the recent case of *Milheim v. Moffat Tunnel Improvement District, supra,* and it was there held that special assessments are not a tax within the meaning of that section of the constitution, citing *Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041, 17 L. R. A. 135. That case lays down what is now the well settled general rule. See 25 R. C. L. 90, section 7.

It is claimed that the Conservancy Act is in violation of article XX of the state constitution. Article XX is the Home Rule amendment. We have held that the Moffat Tunnel law, creating the Moffat Tunnel Improvement District, does not violate Article XX. *Milheim v. Moffat Tunnel Improvement District, supra.* This is conceded by plaintiff, but it is insisted that the Moffat Tunnel case is not decisive of the instant case because under the Conservancy Act the city must pay the assessments levied ·by the district "from funds levied as general taxes." This distinction, or circumstance, does not affect the applicability of the Moffat Tunnel decision. That decision in this respect was based on the proposition that the improvement district is an independent entity, and that the legislature has the authority to form a district, involv-

ing parts of counties and cities, citing *Wilson v. Board of Trustees,* 133 Ill. 443, 27 N. E. 203, a case involving a sanitary district, established by the legislature, which included a part of the City of Chicago and certain outlying territory.

Article XX governs local and municipal improvements of the Home Rule City. The improvements authorized by the Conservancy Act are not those of Pueblo, or of any particular city or town, but of the Conservancy District. The "Home Rule" question arose in *Miami County v. Dayton, supra,* and was decided consistently with the views herein expressed.

The demurrer of the plaintiff to the plea and answer of the respondents is overruled, and the information in quo warranto is dismissed.

MR. CHIEF JUSTICE TELLER not participating.