No. 15,466.

City of Aurora *v.* Aurora Sanitation District et al.

(149 P. [2d] 662)

Decided May 22, 1944.

Mr. CHARLES E. HOLCOMB, for plaintiff in error.

Mr. JOSEPH G. PRENTICE, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error, hereinafter to be referred to

as the city, is a municipal corporation organized under the general statutes providing for the formation of towns and cities. Defendant in error, which we shall call the district, is a sanitation district incorporated under the provisions of chapter 175, S.L. 1939, as amended by chapter 232, S.L. 1941. The combined acts appear as chapter 173A, 1942 Supp. to '35 C.S.A., and our reference to specific sections will follow the enumeration of the latter. To provide revenue for the installation and maintenance of sewage disposal facilities, these laws confer upon a district the right to collect tolls and service charges (section 13 [1], and, in addition, as supplemental to such income, to levy and collect ad valorem taxes against property within the district (sections 14 to 19 inclusive). The legislature did not attempt to confer upon such districts authority to impose special assessments. *Gordon v. Wheatridge Water Dist.*, 107 Colo. 128, 109 P. (2d) 899. The area of the district lies entirely within the corporate limits of the city, but is not coextensive therewith. Unsuccessful in a proceeding instituted in the district court to have the further operations of the district enjoined and its existence nullified, the city brings the judgment in the cause here for review.

As stipulated by the parties in the agreed statement of facts, the two questions posed for determination, are whether the legislature had the authority: (1) To enact legislation permitting the formation of a sanitation district of the type herein involved, solely within the confines of a municipality of the class of the City of Aurora, and, (2) to delegate to such district the power to levy taxes within a municipality.

Concerning the permissible scopes and sites of sanitation districts, the pertinent statute, by section 2, provides that such "may be entirely within or entirely without, or partly within and partly without one or more municipalities." Thus, unless the general assembly lawfully was without power to so enact, the forma-

tion of the questioned district "entirely within" the municipality of Aurora was expressly and specifically permissible under the law.

In the consideration of the questions presented it is to be noted that under the agreed statement of facts, the intrusion upon the city of which complaint is made, is limited solely to that arising from the legislative grant to the district permitting the exaction of ad valorem taxes within the area of the city included in the perimeter of the district.

 The legislation here in question obviously was patterned after the Conservancy Act of Colorado, chapter 1, Ex. S.L. '22, and the Water Conservation Districts Act, chapter 266, S.L. 1937. In *People v. Lee,* 72 Colo. 598, 213 Pac. 583, involving the Pueblo Conservancy District, which overlapped the area of the City of Pueblo and which was formed under the 1922 Act, and in *People ex rel. v. Letford,* 102 Colo. 284, 79 P. (2d) 274, relating to the Northern Colorado Water Conservancy District, created under the 1937 law, we held that the legislature had the right to authorize the formation of quasi-municipal districts, with the power to tax for their special purposes, which might embrace or include cities and towns within their boundaries. A like decision was reached in *Milheim v. Moffat Tunnel District,* 72 Colo. 268, 211 Pac. 649. The applicability of the reasoning upon which these conclusions are based, to the proceeding at bar is apparent from our language in the opinion in *People v. Lee, supra,* wherein, in commenting on our holding in the Milheim case, we said: "That decision (Milheim) in this respect was based on the proposition that the improvement district is an independent entity, and that the legislature has the authority to form a district, involving parts of counties and cities, citing *Wilson v. Board of Trustees,* 133 Ill. 443, 27 N.E. 203, a case involving a sanitary district, established by the legislature, which included a part of the City of Chicago and certain outlying territory." Coun-

sel for the city neither challenges the validity of the foregoing decisions, nor in their light, questions that the legislature, inherently and constitutionally, has the power to confer upon what he denominates "the larger districts" the right to levy taxes within cities or towns lying within the district area, but argues that a differentiation must be observed where the district is small and wholly within a municipality which already has authority to tax for municipal purposes. No cases are cited in which the size of a district is made the criterion of the creative powers of the legislature, but as precluding the legality of the authorization here bestowed and in support of his position on the first of the queries posed, counsel for the city basically relies upon the principle, "There cannot be at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdictions and privileges." 1 Dillon Mun. Corp. (4th ed.) §184. This proposition is fundamental and is not questioned by the district. See, also, McQuillan on Mun. Corp. (2d ed.) Rev. Vol. 1, p. 775, §283. This rule does not rest upon any theory of constitutional limitation, but upon the practical consideration that intolerable confusion instead of good government, almost inevitably would attain in a territory in which two municipal corporations of like kind and powers attempted to function coincidentally. *In Re Sanitary Board of East Fruitvale Sanitary Dist.,* 158 Cal. 453, 111 Pac. 368. It is to be observed that the inhibition is limited to a situation where the jurisdiction, powers and privileges conferred on the conflicting governmental agencies are substantially coextensive in scope and objective. Thus, in recognition of a diverse situation, as well established as the foregoing principle, is the proposition that in the absence of constitutional restrictions—and under our decisions to be mentioned later none are attendant here—"no objection exists to the power of the legislature to authorize the formation of two municipal corporations in the same territory at

the same time for different purposes." McQuillan Mun. Corp., rev. vol. 1, p. 775, §283. Stated another way: "The legislature may, *for one purpose,* create a municipal corporation embracing territory situated wholly or partly within the boundaries of another municipal corporation already organized for another purpose." 37 Am. Jur., p. 633, §15. In this connection, it is to be borne in mind that the identity of territorial limits of overlapping public corporations is immaterial if such entities have separate and distinct governmental purposes. *Board of Education v. Upham,* 357 Ill. 263, 191 N.E. 876, 94 A.L.R. 813; *South Park Commissioners v. Chicago City Ry. Co.,* 286 Ill. 504, 122 N.E. 89.

As proclaimed by the legislative enactments in consideration, the one and only purpose of the sanitation district was "to provide sewage disposal." Section 2 of both acts. To further emphasize, that in authorizing the organization of a sanitation district "entirely within or entirely without * * * one or more municipalities," it did not intend to permit the superimposition upon the latter of another municipal authority with coextensive multiple powers of local government, the legislature, in section 7 of each act, specified that, when formed, the sanitation district "shall be a governmental subdivision of the State of Colorado and a body corporate with all the powers of a public or quasi-municipal corporation." The significance, as well as the definite limitations, of the latter legislative declaration, is made apparent when it is considered that a quasi-municipal corporation is not a true municipal corporation having powers of local government, but is merely a public agency endowed with such of the attributes of a municipality as may be necessary in the performance of its limited objective. *People ex rel. v. Letford, supra.*

While the city does not contend that it has provided facilities for sewage disposal within the area of the district, its counsel in his brief states that the laws

under which it is incorporated permit it directly, or through the medium of special improvement districts created by ordinance, to install and maintain sewers within its boundaries, but it is not mentioned in the statement of facts that the city presently has the legal ability so to perform or that it comes within the tolerance of the limitations, financial or otherwise, attendant to proceeding under general enactments. Nor is it argued, as would be precluded by an examination of our statutes, that in any event the power of the city to provide for sewage disposal under general law is coextensive with the expeditious facilities conferred upon a sanitation district by the legislative acts in consideration. In any event, in numerous cases involving the validity of legislative authorization to public corporations to perform limited objectives within the confines of a pre-existing municipality of general powers, appellate courts in many jurisdictions have determined that a conflict in authority generally analogous to that asserted here, did not offend legally. Thus in *Kelley v. Brunswick School Dist.*, 134 Me. 414, 187 Atl. 703, in which it was so held, the following is quoted: "In *Malaley v. Marysville*, 37 Cal. App. 638, 174 P. 367, 369, the court, quoting from a previous case [*Los Angeles School Dist. v. Longden,* 148 Cal. 380, 83 P. 256] says: 'What, therefore, the Wetmore Case [99 Cal. 146 (33 P. 769)] and the Law Case [144 Cal. 384 (77 P. 1014)] decided was that the erection of schoolhouses within the corporated limits of a municipality was justly to be regarded as a municipal affair, and that the city therefore, as such, could create a bonded indebtedness for such and like purposes, even though power to do the same thing was, under the general school system of the state, vested in a school district which, while occupying the same territory as that of the city, was still in point of law a distinct corporate entity. It follows therefore that the declaration of this court that the issuing of bonds for the building of schoolhouses by a city is a

municipal affair constitutes in no sense a negation of the fact that another corporate entity—the school district—may, under the general school system of the state, do the same thing for the same purpose.'

"The case proceeds: 'That, notwithstanding that they are different and separate or distinct corporate entities, a municipality and a school district, the territorial boundaries of which are the same as those of the city, may, if a legislature elects to give them the right to do so, exercise precisely the same identical power with respect to matters connected with and calculated to further the interests of the public school system.' " See, also, *Attorney General ex rel. v. Thompson,* 168 Mich. 511, 134 N.W. 722; *Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580, and *Public Utility Dist. No. 1 v. Superior Court,* 199 Wash. 146, 90 P. (2d) 737.

In support of the contention that the creation of the Aurora Sanitation District was precluded by the rule that two municipal authorities will not be permitted to exercise power in the same area, over the same subject, at the same time, counsel for the city cites the cases of *In Re Sanitary Board of East Fruitvale Sanitary District, supra,* and *Maulding v. Skillet Fork River Outlet Union Drainage Dist.,* 313 Ill. 216, 145 N.E. 227. As has been mentioned hereinabove, the opinion in the Fruitvale case makes it clear that such rule does "not rest upon any theory of constitutional limitation." Therein the court expressed that it viewed the question for determination "purely as one of statutory construction," which "may be decided without challenging the power of the legislature to authorize the creation of sanitary districts covering * * * the territory of cities or towns." Examining the various California acts involved, the court found nothing therein indicating a legislative intent to continue the existence and powers of the sanitary district after the annexation of its territories to a city, and in the absence thereof, under the general rule of prohibition against conflict in municipal authority,

concluded that the functioning of the sanitary district ceased at the time of its annexation. It seems very evident from the language of the court that a contrary result would have attained if the California statutes, like those of Colorado here in examination, unequivocally had conferred authority upon the sanitation district to operate within another municipality. That this deduction is warranted appears from the opinion in the later California case of *Galt County Water District v. Evans,* 10 Cal. App. (2d) 116, 51 P. (2d) 202, wherein, because the legislature of that state subsequently so had provided expressly, the court held that even after its annexation to the Sacramento Municipal Utility District, the involved water district still might exercise the power to incur bonded indebtedness. Concerning the controlling force of legislative expression, and its effect on the Fruitvale case, supra, the court said: "We may fairly assume that the legislature, having in mind a situation similar to that discussed in *In Re Sanitary Board of East Fruitvale Sanitary District, supra,* deliberately proposed to correct the condition there pointed out and enacted the amendment referred to and has accordingly exercised its power and expressed its legislative intent."

The opinion in the second case upon which counsel for the city relies—*Maulding v. Skillet Fork River Outlet Union Drainage Dist., supra*—merely recites the rule, that authority may not be conferred on two separate municipal corporations to exercise sovereignty over the same territory, at the same time, for the same purpose, and then decides that the Illinois law permitting the organization of an outlet district overlapping the area included in a pre-existing special drainage district *did not* transgress such principle, because the newly formed outlet district could "only exercise power for the improvement of the outlet and assess lands for the benefit derived therefrom." That is to say, the Illinois court held that the legislature might for one purpose create a

municipal corporation embracing territory located within the area of another municipal corporation already organized for another purpose. Thus, if at all pertinent in the instant controversy, the cases upon which counsel for the city relies, instead of importing invalidity to the legislative acts authorizing the formation of the Aurora Sanitation District within the limits of a municipality, would seem to support their legal integrity.

The following cases are indicative of the attitude of the courts of Illinois on this subject: In *Wilson v. Board of Trustees, supra,* one of the questions was, whether it was within the power of the legislature, under the Constitution, to authorize the formation of sanitary districts, disregarding the existence and boundaries of pre-existing cities, and invest the district with the power of taxation for sanitary purposes. In disposing of such question the Illinois Supreme Court held that while the legislature may vest in cities and towns the power to construct sewers, drains, etc., for sanitary purposes, it may also create another corporation including both city and county, and invest it with powers of taxation for sanitary purposes, coextensive with the territory included therein. It further was expressed that it was wholly unnecessary that the corporate authorities of the new corporation should also be the corporate authorities of some pre-existing municipality.

Following the foregoing authority, in *People ex rel. v. Nibbe,* 150 Ill. 269, 37 N.E. 217, it was held by the Supreme Court of Illinois, that a drainage district organized under the Farm Drainage Act may include within its limits a part of the territory of a village already organized under the general law. It is of interest in the instant controversy to note that certain sections of the Illinois act upheld, specifically provided for the formation of districts for combined drainage out of territory lying within a *single town.* See, also, *Perkins v. Board of Commissioners of Cook County,* 271 Ill. 449, 111 N.E. 580, Ann. Cas. 1917A, 27, wherein it

was decided that for the more efficient administration of public affairs the legislature might provide for the organization of a municipal corporation (a forest preserve district) embracing territory situated wholly within, or partly within and partly without, the boundaries of another municipal corporation. Also in Illinois, a township park could exist within a village and remain under control of township park commissioners so that the village could not prohibit the operation of a lunch stand under a concession in the park. *People ex rel. v. Village of Lakewood,* 368 Ill. 209, 13 N.E. (2d) 275.

In so far as the violation of its municipal integrity or authority is involved, we are unable to understand how the plight of the City of Aurora or its individual inhabitants, in the instant situation differs in any degree from that of the many cities and towns included within the numerous legally sanctioned "larger" quasi-municipal districts functioning within this state. In other words, the circumstance that the district may be located entirely within the boundaries of a given city creates a no greater intrusion upon it than would be the situation, admittedly permissible, if the identical district area included within the limits of the municipality happened to be part of a larger district, which also embraced territory without the city's boundaries. As was expressed in *Board of Education v. Upham, supra,* in considering the criticalness of asserted conflict in municipal authority, the identity of territorial limits of overlapping public corporations is immaterial if such entities have separate and distinct governmental purposes.

In this connection it seems worthy of mention that this sanitation district was not imposed by legislative fiat upon the populace affected, but was brought into being by their voluntary act and vote within the privileges accorded by the enabling statute. As must follow from the stipulation to regularity in organization, the petition which fixed the boundaries was joined in by

at least ten per cent of the taxpaying electors therein, who perforce also must have occupied the same status with respect to the city. Following notice to all, the district court, after a hearing at which any property owner might have presented grounds for the exclusion of his lands, ordered an election at which a majority of the votes cast favored the organization. Thus the legislation, and its processes, cannot be said to be other than in accord, to the fullest extent, with the principles of local self-government.

▪ By reason of the factors of distinction between the powers, authority and objectives of the city and district recognized by the authorities we have mentioned, we conclude that the organization of the district was not precluded by the circumstance that it was located within the confines of the city, and that in so permitting, the legislature by the enactment in question, did not offend the fundamental rule relied upon by the city.

▪ It next is urged as error that the legislative acts under which the district was organized, in so far as such apply 'to districts located entirely within a city such as the plaintiff" contravene section 7, article X of the Colorado Constitution. As will be noted from the language of the city's specification, this contention is based upon the assumption that as between districts wholly within a city and those which may overlap it, a different rule attains. Our conclusion that the asserted differentiation is not tenable, adversely disposes of the instant contention when the previous decisions of this court are considered. As here said to be pertinent, section 7 specifies that the legislature "shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by law, vest in the corporate authorities thereof respectively, the power to assess and collect taxes for all purposes of such corporation." As the basis of the alleged conflict, it is argued "that the legislature by allowing the crea-

tion of said district has delegated to such district a power which it [the legislature] itself does not have, namely: the power to tax inhabitants of a city for a purely municipal function." In *Milheim v. Moffat Tunnel District, supra,* on a similar objection, we resolved adversely to the contention of the city here, saying: "It is said that it [Moffat Tunnel Act] violates section 7 of article X in that it is an imposition by the General Assembly of taxes for municipal purposes. There is no ground for this contention, inasmuch as the assessment is to be made by the officers of the district and not directly by the legislature." The statutes herein involved also so provide. The holding in the Milheim case on this point was followed in *People ex rel. v. Letford, supra.*

Lastly, it is contended that the legislative acts in consideration are "contrary to the provisions of * * * section 35, article V of the Constitution of Colorado." It is to be noted that this specification 1(a), as made, is a general challenge to the constitutionality of the acts without reference to the size or location of a given sanitation district. Said section 35 reads as follows: "The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." The invalidity of the city's contention is conclusively established by our successive decisions in *Milheim v. Moffat Tunnel District; People v. Lee;* and *People ex rel. v. Letford, supra.* wherein we held that neither the Moffat Tunnel Commission nor the Board of Directors of the Conservancy Districts, the powers of duties of which are almost identical with those of a sanitation district, were a "special commission" within the meaning of the prohibition

contained in the foregong constitutional provision.
The judgment is affirmed.

MR. JUSTICE BAKKE and MR. JUSTICE BURKE dissent.