## No. 16,804.

ANDERSON *v.* TOWN OF WESTMINSTER ET AL.

(244 P. [2d] 371)

Decided April 21, 1952.

Mr. GUY K. BREWSTER, for plaintiff in error.

Mr. CLIFFORD W. MILLS, Mr. MYLES P. TALLMADGE, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THIS case involves the validity of a legislative act (chapter 205, S.L. '49) relating to improvement districts in cities and towns. It arose when plaintiff in error, who

was plaintiff in the trial court, brought this action as a tax paying elector of the district known as "General Improvement District No. 1 in the Town of Westminster," Adams county, Colorado, against defendants in error who were defendants in the trial court.

In the complaint it is set forth that a petition, in which petitioners sought the organization of the above-mentioned improvement district, was duly filed with the clerk of the board of trustees of the town; that the petition was signed by a majority of the taxpaying electors of the town who owned real or personal property within the particularly described area, which is less than that of the town, and in which the real and personal property owned by petitioners has an assessed value of not less than one-half of the assessed value of all the real and personal property in the district.

It further appears from the complaint that a hearing was had on the petition and thereafter the board of trustees of the Town of Westminster adopted ordinance No. 146 for the establishment of General Improvement District No. 1. It then is alleged that the individual defendants, as members of the board of trustees of the improvement district, proposed and threatened to usurp and interfere with the powers and duties vested in the town and its board of trustees. It is alleged in the complaint that, while the laws of the state vest powers in municipal bodies to install all public improvements therein and give them power to incur indebtedness and levy taxes upon the property within the district, these proposed taxes would create an indebtedness secured by a tax lien on a parity with the lien of other taxes levied and assessed by Westminster. It also is alleged that the act under which the improvement district was organized is illegal, because it permits the creation within the town of a distinct, municipal corporation exercising the same powers, jurisdictions and privileges which are vested in the town; that the act is unconstitutional in that it vio-

lates section 7 article X, section 8 article XI, and section 1 article V of the Colorado Constitution.

Plaintiff prayed for an injunction enjoining defendants from proceeding with the construction of any public improvement in the district under the 1949 act. A declaratory judgment also was sought, holding the act null and void. The defendants filed a motion to dismiss upon the ground that the "complaint fails to state a claim upon which relief can be granted."

The trial court entered the following findings of fact: That there was filed with the clerk of the Town of Westminster a petition for the organization of General Improvement District No. 1 in the Town of Westminster, for the purpose of installing combination curbs, gutters and walks of an over-all width of approximately three and one-half feet; and for paving the streets with an oil mat sufficiently thick to accommodate the traffic thereon; that the petition was signed by a majority of the tax-paying electors of said proposed district; that notice of a hearing on the petition was duly published in accordance with the provisions of the 1949 act; that on the 4th day of June, 1951, the board of trustees of the Town of Westminster held a hearing on the petition pursuant to notice; that subsequently the trustees adopted and made effective an ordinance establishing and organizing General Improvement District No. 1. It should here be noted that the 1949 act provides that the directors of an improvement district shall be the same persons as the trustees of the town.

The trial court concluded: 1. That the general improvement district had been duly organized and established, strictly in accordance with the provisions of chapter 205, S.L. '49; that the district is a quasi-municipality of the state, having the limited proprietary powers enumerated in chapter 205, S.L. '49; that any action taken or to be taken by the directors of the district in accordance with the provisions of said chapter will not usurp or interfere with any of the powers or duties of the trustees of

the town prescribed by state laws or otherwise; that the proposed improvements will not duplicate, or interfere with, any municipal improvement already constructed or planned to be constructed within the municipality; that chapter 205, S.L. '49, is not unconstitutional in that it permits the creation within the town of a distinct municipal corporation exercising the same powers, jurisdictions and privileges as are vested by law in the town or its board of trustees; that chapter 205, S.L. '49, is a valid and constitutional law in every respect and is not contrary to, nor does it infringe or violate section 7 article X, section 8 article XI, section 1 article V, section 25 article II, or any other section of our State Constitution.

The court accordingly denied the injunction requested and declared that defendants have the lawful power, right and authority to proceed under chapter 205, S.L. '49, and the ordinance of the Town of Westminster establishing a district, and dismissed the action.

Counsel for plaintiff argues the eight specifications of points under three headings:

1. It is first argued that, "There cannot be, at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdictions, and privileges," citing Dillon on Municipal Corporations (5th ed.) page 616, section 354. Plaintiff shows that defendant town derives its powers under subsections 3 and 7, section 10, chapter 163, '35 C.S.A., tracing back to the General Laws of 1877 of the State of Colorado, giving boards of trustees in towns the power "to grade, pave or otherwise improve streets, alleys, avenues, sidewalks * * * " and also "to levy and collect taxes for general and special purposes on real and personal property." Counsel for plaintiff argues that since chapter 205, S.L. '49, authorizes another public corporation to make any public improvement, excepting electric light or gas systems or plants, and empowers such corporations to levy and collect ad valorem taxes on all taxable property within the district, the result is specifically that which

the afore-mentioned principle of municipal corporation law prohibits.

Counsel also points to the reliance which our court placed upon that principle in *City of Aurora v. Aurora Sanitation District,* 112 Colo. 406, 410, 149 P. (2d) 662. In that case we affirmed the judgment of the trial court which upheld the validity of the Aurora Sanitation District created under chapter 175, S.L. '39, together with its amendment in 1941. The Aurora Sanitation District had been created within the boundaries of the town of Aurora; the sole purpose of the creation of this district was to supply a system of sewage to the inhabitants of the district which up to that time had not been provided either by the town government or by any other agency. We held that, in the absence of constitutional restrictions, no objection exists to the power of the legislature to authorize the formation of two municipal corporations in the same territory at the same time for different purposes; that under such circumstances the identity of territorial limits of overlapping public corporations is immaterial; that the sanitation districts under Colorado statutes are quasi-municipal corporations; and as such, they are not true municipal corporations but merely public agencies endowed with such municipal attributes as may be necessary in the performance of their limited objectives. Mr. Justice Knous, the author of the opinion in that case, included the following: "While the city does not contend that it has provided facilities for sewage disposal within the area of the district, its counsel in his brief states that the laws under which it is incorporated permit it directly, or through the medium of special improvement districts created by ordinance, to install and maintain sewers within its boundaries, but it is not mentioned in the statement of facts that the city presently has the legal ability so to perform or that it comes within the tolerance of the limitations, financial or otherwise, attendant to proceeding under general enactments. Nor is it argued, as would be precluded by an examination of our

statutes, that in any event the power of the city to provide for sewage disposal under general law is coextensive with the expeditious facilities conferred upon a sanitation district by the legislative acts in consideration. In any event, in numerous cases involving the validity of legislative authorization to public corporations to perform limited objectives within the confines of a pre-existing municipality of general powers, appellate courts in many jurisdictions have determined that a conflict in authority generally analogous to that asserted here, did not offend legally."

From the foregoing discussion it would appear that emphasis is placed upon the exercise of the power in question. In the Aurora case the town, under its general powers, not having supplied proper or adequate sewage facilities to its inhabitants, the sanitation district created solely for that purpose promptly exercised authority in that field. There was no conflict, because the sanitation district alone was the sole agency, municipal or quasi-municipal, purporting to function in the field of sewage disposal. There, as in the instant case, it appeared that the town, with its broad general powers authorizing it to undertake desired respective public works, was unable adequately to finance the contemplated improvements because of the provision in the Constitution limiting the amount of its general obligation bonds to three per cent of the assessed valuation of the property, whereas the corresponding statutory limitation on bonded indebtedness provided in the 1949 act for the improvement district is set at twenty-five per cent.

In this first case involving the 1949 act it would seem that the legislature almost had made it impossible for two political subdivisions to exercise the same functions at the same time, by providing that the directors of the district created for a special and limited purpose should be the same persons as the trustees of the municipal corporation having the broad general powers. Here is an almost automatic assurance that the trustees of the town

would not allow a quasi-municipal corporation to come into existence to function within their territory, unless the town government itself was either unable to act or, in fact, refused to function in the field proposed to be occupied by the quasi-municipal organization.

In fact it is not without significance that, unlike the Aurora case, supra, and that of *Garden Home Sanitation District v. City and County of Denver,* 116 Colo. 1, 177 P. (2d) 546, we are not here confronted with a suit between a town and an improvement district. The Town of Westminster is not objecting to the functioning of the improvement district.

In *Garden Home Sanitation District v. City and County of Denver, supra,* the converse situation appeared to that in the Aurora case. There it was the sanitation district representatives who complained of the usurping of its functions by the City and County of Denver, which had annexed a portion of the territory in the proposed sanitation district and promptly installed a sewage system connected with the city. From the complaint it appears that the district's own officials had made no progress in the accomplishment of its plan to establish sanitary sewer services for its inhabitants, including the part which had become annexed to Denver, and it further appears that the success of the effort was dependent upon a Federal Works Agency grant "* * * of at least 50% of the cost of the project," which it had been unable to obtain. We there stated, "That defendant [Denver] had authority, generally, to proceed with the undertaking involved in the interest of the inhabitants of the annexed area, is apparent from the provisions of sections 56, 57 and 58 of the Denver Charter (1927 Compilation), and is not questioned. On the other hand, and whatever the authority and power of plaintiff [Garden Home] had it been able to proceed with reasonable celerity, clearly not so, its allegations generously appraised, we cannot think that it my stand athwart the authority of Denver, the latter proceeding on its general

authority, to construct a sanitary sewer in the territory in question. Chapter 173A, supra, constitutes the sole authority of plaintiff, but, the situation here considered, it does not enjoy a monopoly in the premises." In other words, Garden Home Sanitary District was virtually a paper organization, incapable of financing or accomplishing the purposes for which it was brought into existence.

There thus is presented in our jurisdiction recent examples of the application of the rule upon which plaintiff relies. In the Aurora case, where the town government with general powers had been unable to supply its community with satisfactory sewage disposal and a sanitation district, organized with limited powers, had supplied the want, we held that the district had taken over the field of sewage disposal and could not be ousted by the city; whereas in the Garden Home case, supra, where the municipality of Denver had first occupied the field and had promptly functioned, we held that the sanitation district, which for more than a year had been unable to accomplish the purpose for which it had been organized, could not stop the operations in which Denver already had been successfully engaged. As we pointed out in the Aurora case, the rule quoted from Dillon on Municipal Corporations, is not based upon any theory of constitutional law but is designed simply to prevent confusion. We believe it has been so applied in the Aurora and Garden Home cases. In fact, in the Aurora case we adverted to the possibility of such a situation occurring as later did arise in the Garden Home case. In the Aurora case we discussed the Law and Wetmore cases in California (*Law v. City and County of San Francisco,* 144 Cal. 384, 77 Pac. 1014; *Wetmore v. City of Oakland,* 99 Cal. 146, 33 Pac. 769), where a municipality, failing action by a coterminous school district, constructed necessary school buildings for the community.

2. It next is argued by counsel for plaintiff in error that the 1949 act is invalid in that it authorizes the direc-

tors of a district to levy ad valorem taxes and incur indebtedness without limitation, contrary to the provisions of section 8, article XI of the Colorado Consitution. That provision, to which we already have referred, is that the total indebtedness of a town for all purposes, except water debts, shall not at any time exceed three per cent of the total assessed valuation of the taxable property, and that such indebtedness shall be paid in not less than ten nor more than fifteen years after the creation thereof. The 1949 act authorizes an improvement district to issue negotiable coupon bonds in an amount not exceeding twenty-five per cent of the assessed valuation of the district, and provides that such bonds shall be due and payable commencing not earlier than three years, and extending not more than twenty years, from date. It seems to us that this argument was answered in *People ex rel. v. Letford,* 102 Colo. 284, 79 P. (2d) 274; *Milheim v. Moffat Tunnel Improvement District,* 72 Colo. 268, 211 Pac. 649; *People ex rel. v. Lee,* 72 Colo. 598, 213 Pac. 583.

In the Milheim case, supra, we stated that the Moffat Tunnel District is not a city or town. "Therefore the act does not violate section 8 of article XI of the Constitution, which places limitations upon cities and towns in the matter of contracting debts by loans, and provides for the submission of certain questions relating to indebtedness to the qualified electors. That section applies to cities and towns only. The case of *Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066, involved Denver, a city, and is not applicable in the instant case. Section 6, article XI, is similar to section 8, but applies to counties only, and section 7 applies to school districts. None of these sections apply to a quasi corporation such as this improvement district."

Likewise in the Letford case, supra, it was stated: "Neither does the act contravene section 8, article XI of our Constitution. The provision by its terms relates only to cities and towns, and prohibits them from contracting loans or debts without submitting the question

to its electors. It has no application to an independent entity such as this conservancy district. *Milheim v. Moffat Tunnel District, supra."*

Finally, in *People ex rel. v. Lee, supra,* it was said: "Such taxation, and the indebtedness involved, is not such taxation and indebtedness as is contemplated by Section 8, Article XI of the Constitution, above quoted. That section applies only to taxation and indebtedness incurred for the governmental purposes of the city. 25 R.C.L. 92. Here the tax is for the purpose of paying an assessment to carry out the purposes, not of the city, but of the Conservancy District."

3. It is urged by counsel for plaintiff in error that the 1949 act violates the due process clause, section 25 of article II, of the Colorado Constitution, in that it deprives plaintiff of a court hearing prior to the organization of the district. The pertinent sections of the statute read as follows:

"Section 6. As soon as possible after the filing of such petition, the governing body shall by order fix a place and time, not less than twenty days nor more than forty days after the petition is filed for a hearing thereon and thereupon the clerk of the governing body shall cause notice by publication to be made of the pendency of the petition, of the purposes and boundaries of the proposed district and of the time and place of hearing thereon; the clerk shall also forthwith cause a copy of said notice to be mailed to each taxpaying elector of the district at his or her last known address, as disclosed by the tax records of the county in which said city or town is located.

\*   \*   \*

"The notice of hearing on the petition must set forth the fact that all the property in the district is subject to the lien of the indebtedness and must set forth the amount of the proposed indebtedness." Section 6, article II, chapter 205, S.L. '49.

It was not contended that there was not a compliance

with the specific terms of the statute, but it is argued that, unlike other statutes, this act provides for a hearing before the governing board, namely the town trustees in the instant case, rather than before a court.

Section 7, article II, chapter 205, S.L. '49, provides:

"If it shall appear that said petition is not signed by at least a majority of the taxpaying electors of the proposed district, who own property therein having an assessed value of not less than one-half of the assessed value of all the real and personal property in said district, or if it is shown that the proposed improvement will not confer a general benefit on the district, or that the cost of the improvement would be excessive as compared with the value of the property in the district, the governing body shall thereupon dismiss the petition and adjudge the costs against those executing the bond filed to pay such costs.

\* \* \*

"Upon the said hearing, if it shall appear that a petition for the organization of a district has been duly signed and presented, as hereinabove provided, in conformity with this Act, and that the allegations of the petition are true, the governing body shall, by ordinance duly adopted and made effective, adjudicate all questions of jurisdiction, declare the district organized and give it the corporate name specified in the petition, \* \* \*.

"If an ordinance be adopted establishing the district, such ordinance shall finally and conclusively establish the regular organization of the said district against all persons, unless an action attacking the validity of the organization shall be commenced in a court of competent jurisdiction within thirty days after the adoption of such ordinance. \* \* \* "

We are of the opinion that the due process clause of our Constitution has not been violated by the foregoing provisions of the act. A proper hearing has been provided before the town trustees, which is the governing body of the community out of which the proposed district would

be carved; a body most sensitive to the needs of the community and jealous of its prerogatives in governing the community. Under the act it has discretionary power to determine whether the proposed district would be a benefit to the community, or whether the costs would be excessive in relation to the value of the property in the district. In *Brown v. City of Denver*, 7 Colo. 305, 311, 3 Pac. 455, we said: "It matters not what the character of the proceeding may be, by virtue of which his property is to be taken, whether administrative, judicial, summary or otherwise; at some stage of it, and before the property is taken or the charge becomes absolute against either the owner or his property, an opportunity for the correction of wrongs and errors which may have been committed must be given." We approved that statement in *Smith Brothers Cleaners and Dyers v. People ex rel. Rogers*, 108 Colo. 449, 457, 119 Pac. 623. See also, *People ex rel. v. Letford, supra,* and *Milheim v. Moffat Tunnel Improvement District, supra.*

We believe a hearing before the governing body of the town before the passage of any ordinance and, in the event of a subsequent ordinance creating the district, the right of judicial review of its validity preserves due process.

The judgment is affirmed.